**Ex parte Clancy S. CUMMINGS.**

**No. 9306.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1980.

Templeton & Garner, Robert E. Garner, Amarillo, for relator.

Underwood, Wilson, Berry, Stein & Johnson, Don M. Dean and Josiah M. Daniel, III, Amarillo, for respondent.

COUNTISS, Justice.

This is an original habeas corpus proceeding. On November 21, 1980, Relator Clancy S. Cummings was adjudged in contempt by the 69th District Court of Dallam County for failure to make payments for the support of his minor children as required by a divorce judgment rendered by that court. The contempt judgment ordered punishment of 30 days confinement in the county jail and confinement thereafter until delinquent child support and costs were paid. We granted leave to file the petition for writ of habeas corpus and released Relator on bond pending final determination of this cause. Having concluded that the contempt judgment is not void, we deny the writ of habeas corpus and remand Relator to the custody of the Sheriff of Dallam County.

Relator presents five grounds of error that raise three questions. We must determine whether the contempt judgment is void because: (1) Relator conclusively established past and present inability to pay the delinquent support; (2) the divorce judgment upon which the contempt is founded is so vague and ambiguous as to be unenforceable; and (3) Relator was denied due process because he was not served with citation and the hearing was two days after he received actual notice. We will resolve the questions in the order stated.

Clancy S. Cummings and Sue Pitts Cummings were divorced on December 14, 1977. Mrs. Cummings was appointed managing conservator of the two daughters born of the marriage and Relator was ordered to pay $500 per month child support on the first day of each month, beginning January 1, 1978. The $500 per month payment continues "until the date any child reaches the

age of 18 years or is otherwise emancipated"; thereafter, it is reduced to $300 per month until the youngest child is 18 or emancipated. The decree recited the birth date of the oldest child as October 26, 1962. All parties agree the date was in error and her birth date is actually November 26, 1962.

In her motion for contempt, filed November 7, 1980, Mrs. Cummings alleged Relator's failure to pay $500 per month for the months of July through November 1980. The show cause hearing was set for November 21, 1980.

The transcript does not reflect service on Relator. On November 20, 1980, however, Relator filed a response to the contempt motion. He admitted the $2,500 delinquency, but plead past and present inability to pay as a defense. He also plead expectations of becoming employed in the early part of 1981, and the desire to become current in his support payments as quickly as possible. He agreed that a reasonable fee should be awarded Mrs. Cummings' counsel.

On November 21, 1980, Relator appeared with his counsel, announced ready for trial and stipulated that he was $2,500 in arrears. After hearing evidence the trial court found Relator in contempt, rendered the judgment in question here, and remanded Relator to jail.

■ The contempt judgment imposes two penalties on Relator. He is first sentenced to thirty days in jail for failing to pay the support as ordered by the court. This sentence for criminal or penal contempt is authorized by Tex.Rev.Civ.Stat. Ann. art. 1911a (Vernon Supp. 1980–1981), as punishment for failure to obey orders of the court. He is then required to remain in jail, after service of the thirty day sentence, until he has purged himself of the contempt by paying due child support and costs of the contempt hearing. This sentence for civil contempt, of indefinite duration, is designed to coerce Relator into compliance with the court order he has violated. Relator determines the duration of the latter sentence by deciding if, and when, he will obey the court order he has violated. Thus, he carries the jail keys in his pocket. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976).

■ Relator's original habeas corpus proceeding in this court is a collateral attack on the contempt judgment, necessitated because there is no appeal from a contempt judgment. *Ex parte Supercinski*, 561 S.W.2d 482 (Tex.Cr.App.1977). Being a collateral attack, Relator must convince the appellate court that the judgment is void. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976).

■ We will first determine whether the criminal contempt portion of the judgment is void. Relator's burden is to convince the reviewing court that he established conclusively in the trial court, i. e., as a matter of law, that it was impossible for him to obey the court order at the time performance was due. *Ex parte Andrews*, 566 S.W.2d 668 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Thus, when delinquent child support is in issue, Relator must conclusively establish his inability to pay each payment as it accrued. *See Ex parte Townsley*, 156 Tex. 402, 297 S.W.2d 111 (1956); *Ex parte Rohleder*, 424 S.W.2d 891 (Tex.1967).

After reviewing the evidence, we conclude that Relator failed to carry his burden. It is apparent that Relator, a farmer and rancher, is in serious financial trouble. In 1979 he borrowed seven million dollars from the Farmer's Home Administration and it has liens on all of his assets except his clothes, furniture and other personal effects. The loan is in default. The Farmer's Home Administration is hopeful that Relator's mortgaged assets will equal his debt to them. He cannot, however, use the mortgaged assets as security for loans from other sources and it is probable that Farmer's Home Administration will not loan him additional money. Although his problems are serious, he has not been totally without funds immediately prior to and during the July to November, 1980, period when he failed to pay his child support. Between March and November, 1979, when the seven million dollar government loan was being disbursed to Relator, one million dollars of

the loan was given to him to use for operating and living expenses. In the period between September, 1979, and May, 1980, Relator spent approximately $3,400 on flying lessons for himself and his present wife. In July, 1980, he chartered a private plane and flew to Washington, D.C., at an expense of over $500. In October, 1980, his mother loaned him $2,000 for utilities, gasoline and living expenses. He also borrowed a substantial sum of money from his mother, during the time in question, to pay his attorneys for their successful defense of him on criminal charges growing out of his dealings with Farmer's Home Administration.

From this evidence, we cannot conclude that Relator conclusively established the impossibility of paying each payment as it accrued. Thus, the criminal contempt imposed by the trial court is not void.

■ The burden on Relator to convince us that the civil contempt portion of the judgment is void is equally onerous, but is concerned with a different time frame. Relator must conclusively establish impossibility of performance at the time of commitment to jail. *Ex parte Dustman, supra*, at 410. The evidence at the hearing must conclusively establish that Relator did not have, and had no source from which he might be expected to obtain, the arrears. *Ex parte Rohleder, supra*, at 892. Relator cannot be imprisoned if he does not have the means by which he may purge himself of the contempt, because to do so would authorize the trial court to confine him for life. *Ex parte De Wees*, 146 Tex. 564, 210 S.W.2d 145 (1948). The burden on Relator as stated in *Ex parte Hennig*, 559 S.W.2d 401, 402 (Tex.Civ.App.—Dallas 1977, no writ), is conclusive proof "not only that he lacks the financial resources to pay the delinquency, but also that he knows of no source from which the sum might be obtained." In *Hennig*, the court pointed out that the burden can be carried by proof that relator: (1) does not have property that can be sold or mortgaged in order to obtain the necessary amount; (2) has unsuccessfully attempted to borrow the necessary amount from financial institutions; and (3) knows of no other source, including relatives, from which the necessary amount can be obtained.

■ After reviewing the evidence pertinent to the civil contempt we are likewise satisfied Relator did not carry his burden. We have outlined Relator's financial difficulties above. The evidence does not, however, conclusively negate Relator's ability to secure additional funds and thus purge himself of contempt. He has not, for example, attempted to raise money by securing a loan with those personal effects still in his possession. Of greater importance, however, Relator apparently still has access to funds from his mother. She has loaned him between $30,000 and $40,000 in recent months, including the loan in October, 1980, for utilities, gasoline and living expenses. She testified as follows, concerning additional loans:

Q. Mrs. Cummings, are you able to help Clancy any more than you have?

A. Well, I might could by drawing on my savings, what I've done.

    *    *    *    *    *    *

Q. And as a good mother, you're willing to pay money to keep him from being locked up, aren't you?

A. As long as I have it, I will.

Relator's mother is not obligated to loan him money to pay his child support. When she expresses a willingness to do so, however, Relator has not conclusively demonstrated the impossibility of securing funds to purge himself of contempt. The civil contempt portion of the judgment is not void.

Relator's second contention is that the divorce judgment is so vague and ambiguous as to be unenforceable. The divorce judgment stated as a finding that the birth date of the oldest daughter was October 26, 1962, and ordered Relator to pay $500 per month in child support "until the date any child reaches the age of eighteen years or is otherwise emancipated." Thereafter, the payments are reduced to $300 per month. Evidence at the contempt hearing estab-

lished November 26, 1962, as the birth date of the oldest daughter. Since Relator was in default for the months of July through November, 1980, his November obligation would have been $300 instead of $500, thus reducing the arrearage to $2,300, if the October birth date were correct. Relator says the variance between the erroneous birth date recited in the divorce judgment, and the correct birth date that necessarily served as the basis for determining his arrearage, creates a factual variance between the divorce judgment, on the one hand, and the evidence and motion for contempt, on the other hand, that voids the contempt judgment.

We do not agree. Relator judicially admitted a $2,500 arrearage in his pleadings and stipulated to the $2,500 arrearage at the beginning of the contempt hearing. The court then found the arrearage to be in the amount stipulated to and admitted by Relator. Relator is bound by the figure he admitted and to which he stipulated. Tex. R.Civ.P. 11; *Reasoner v. State,* 463 S.W.2d 55 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.).

Relator's final contention is that the contempt judgment is void because he was denied due process of law. He states that he was not served with citation and had only two days actual notice of the hearing. However, prior to the hearing, Relator filed a written answer to the motion for contempt and a motion for reduction of support. He then appeared at the hearing with his counsel and made an unqualified announcement of ready.

Under these facts, we cannot conclude that Relator was denied constitutional due process. His voluntary appearance and answer eliminates the need for personal service. Tex.R.Civ.P. 120.

His presence at the hearing with his counsel, his unqualified announcement of ready, his full participation in the trial, his failure to object to lack of the ten day notice and his failure to seek a continuance preclude a conclusion that he was denied due process. *Ex parte Boyle,* 545 S.W.2d

25, 27 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Ex parte Trodlier,* 554 S.W.2d 793, 795 (Tex.Civ.App.—San Antonio 1977, no writ).

It is ordered that the writ of habeas corpus be denied and Relator be remanded to the custody of the Sheriff of Dallam County.