**Ex parte Joe Bob MULKEY, Relator.**

No. 01–89–00470–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 24, 1989.

Jolene Wilson–Glah, Houston, for relator.

W.J. Coulson, Houston, for respondent.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

## OPINION

DUNN, Justice.

On March 7, 1989, the 309th District Court of Harris County adjudged relator, Joe Bob Mulkey, to be in contempt for failure to make required child support payments in the amount of $260.00 per month, and failure to pay child support arrearage in the amount of $31,061.50. The trial court ordered relator confined to the Harris County Jail until he purged himself of contempt by paying $32,115.50, including attorney's fees of $1,003 and $51 court costs.

This Court granted leave to file a writ of habeas corpus on May 15, 1989, set bond at $100, and ordered relator released from jail pending final determination of the matter.

Relator contends that his confinement is illegal because (1) the motion for contempt is incapable of supporting the resultant finding of contempt in that it fails to properly notify relator of the charges against him; (2) the commitment order is illegal because it finds relator in contempt and commits relator, in part, for amounts that were actually paid; and (3) relator cannot pay the debt and thus cannot purge himself of the contempt.

In his first complaint, relator asserts that the motion for contempt is defective because it does not comply with the specificity requirements of Tex.Fam.Code Ann. § 14.31(b) (Vernon Supp.1989). This section provides that:

> Motions under this subchapter ... shall set out specifically and with particularity the provisions of the final order, decree, or judgment sought to be enforced and, in separate counts, the date, place, and, if applicable, the time of each occasion upon which the respondent has not complied with the order, the manner of the noncompliance, and the relief sought by the movant.

Section 14.33(a) of the Texas Family Code provides that:

> An enforcement order shall contain findings setting out specifically and with particularity or incorporating by reference the provisions of the final order, decree, or judgment for which enforcement was

sought, and the time, date and place of each and any occasion on which the respondent failed to comply with such provisions, and setting out the relief awarded by the court.

Relator claims that this provision requires that the *place* of nonpayment be set out in each count alleging non-compliance in the motion for contempt. He asserts that this alleged failure to comply with §§ 14.31(b) and 14.33(a) resulted in a denial of due process in that relator was not sufficiently apprised of the charges against him.

We overrule this argument. Paragraph one of the motion for contempt sets out precisely the portion of the divorce decree relator is alleged to have violated:

> It is DECREED that Respondent, Joe Bob Mulkey, pay to the Child Support Division of the Juvenile Department, *Post Office Box 5530, Dallas, Texas,* child support in the amount of $260.00 per month ... (emphasis added).

Paragraph two of the motion states that "Respondent has failed to make payments in the amount and on the dates required by the Order as follows: ..." The motion then sets out with particularity relator's failure to comply with the trial court's child support order.

Relator also contends that the motion for contempt is not specific because it references payments due in "77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, and 88," claiming that "a complaint which alleges the last two numbers of a year is fatally defective."

The motion for contempt set out the dates of non-compliance in a standard month/date/year format, i.e. 09/01/77. The non-compliance was delineated, one year per page, with the total arrearage for that year appearing at the bottom of the page. For example, page 4 of the motion for contempt lists the dates of non-compliance for 1978. At the bottom of the page it states:

Total Arrearage for 1978: $1,443.00

Total Cumulative Arrearage: $1,894.00

The process is repeated for each and every year that relator is alleged to have been in contempt. We find that the motion for contempt is sufficiently specific to apprise the relator of the acts of non-compliance with which he is charged.

Relator's first complaint is overruled.

■ Relator next complains that the commitment order is illegal because he is held in contempt for amounts actually paid. In addition to other amounts not paid, the commitment order reflects that relator failed to make a $130 payment on October 15, 1977, and a $130 payment on November 15, 1977. The respondent, Patsy Ruth Mulkey Wolford, testified, however, that relator paid $191 on October 15, 1977, and $321 on November 15, 1977. Relator asserts that the commitment order fails to correctly reflect the evidence and is, therefore, fatally tainted as a result. In support of this contention relator cites *Ex parte Stanford*, 557 S.W.2d 346, 349–50 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding).

*Stanford* is distinguishable. In *Stanford*, the relator was adjudged to be in contempt for failure to make two separate types of payments, one for child support and one for house payments. Mrs. Sanford filed a motion for contempt alleging that Sanford had failed to make any payments to her as required by the order. In that case, this Court held the trial court should have made findings as to each charge, the non-payment of the child support and the non-payment of the house note, and should have fixed separately the punishment assessed for each act. We held that where one penalty is affixed for more than one act of contempt, and it is found that the relator could not be held in contempt for one of the acts, the whole judgment is tainted and is void, and a person held under such a judgment is illegally restrained of his liberty. *Stanford*, 557 S.W.2d at 350. That is not the situation here because the court held relator in contempt for each separate violation of the court's order and assessed punishment for each separate violation.

Ms. Wolford readily admits that the inclusion of the October 1977, and November 1977, dates in the commitment order was error, but she asserts the error should not

render the entire judgment void. This issue was addressed by the Amarillo court in *Ex parte Karr*, 663 S.W.2d 534 (Tex.App. —Amarillo 1983, orig. proceeding). In *Karr*, the relator was held in contempt for failure to comply with court-ordered child visitation. The trial court also ordered Karr confined until she paid all the court costs, including attorney's fees that had been assessed as costs. The Amarillo court voided the portion of the trial court's order confining relator until the court costs were paid, holding, however, that its decree did not vitiate the remainder of the contempt judgment. *Karr*, 663 S.W.2d at 538. Accordingly, we hold that the trial court's order finding relator in contempt for nonpayment of the October 15, 1977 and November 15, 1977 child support payments is void as to those two payments only. Because the trial court assessed punishment for each and every separate act of contempt, the remainder of the judgment is valid.

Relator's second contention is overruled.

■ In relator's third complaint, he asserts that his confinement is illegal because he does not have the funds necessary to purge himself of the contempt.

Relator must have the ability to perform the order of the court. *Ex parte De Wees*, 146 Tex. 564, 210 S.W.2d 145 (1948). If relator *conclusively proves* he is unable to perform, the trial court cannot order the relator's continued imprisonment. *Id.* It is relator's burden to conclusively establish he does not have the funds to pay the past due child support, and that he has no source from which he can obtain the past due child support. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967). He can carry his burden by proving (1) he does not have property that can be sold or mortgaged in order to obtain the necessary amount; (2) he was unsuccessful at borrowing money from financial institutions; and (3) he knows of no other source, including relatives, from which the money can be obtained. *Ex parte Hennig*, 559 S.W.2d 401, 402 (Tex.Civ.App.—Dallas 1977, orig. proceeding).

In his petition for writ of habeas corpus, relator states, under oath:

I have no property which can be sold or mortgaged in order to obtain the amount necessary for my release. All property which I own has been previously liened for debt. I have made three loan applications for the sum necessary to secure my release and all have been denied ... I have contacted friends and family, including my mother, and all have denied me a loan or gift of the necessary funds. My father is deceased. Since being in jail, I have lost my job. All attempts to secure the necessary funds have been unsuccessful. I know of no other source from which the funds can be legally obtained.

In response to this affidavit, Ms. Wolford asserts that relator has not conclusively established that he is unable to purge himself of the contempt.

While the duration of relator's incarceration (69 days) tends to corroborate his claim of inability to pay, relator's affidavit, compared with his testimony at the contempt hearing, leaves unresolved questions as to relator's current ability to discharge the contempt.

Relator averred he was not aware of any other source from which to obtain the necessary funds to discharge the contempt; however, there is evidence that relator received a substantial inheritance. There is no discussion in relator's affidavit concerning the disposition of the monies he inherited. Relator testified he owned two vehicles, one of which was completely paid for. The affidavit contains no statement that either or both of these vehicles have been sold. Relator claims that he has contacted several financial institutions in an attempt to borrow the necessary funds. An examination of the loan documentation furnished by relator reveals that it was not he, but his current wife who made application for the loans.

The present case is readily distinguishable from *Ex parte Peters*, 770 S.W.2d 640 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding). In *Peters*, we were not provided a statement of facts with which to

compare relator's affidavit statements. The real party in interest did not respond to Peters' application for writ of habeas corpus or controvert his affidavit, although she was given an opportunity to do so. Because Peters' affidavit was uncontroverted, and coupled with the length of his incarceration, we held he had conclusively established his inability to discharge the contempt.

We hold that relator did not conclusively establish his inability to pay the past due child support as of the date of the contempt hearing. Because we are unable to resolve the discrepancies between relator's testimony at the contempt hearing and the statements contained in his affidavit, we cannot determine whether relator *currently* has the ability to discharge the contempt.

Accordingly, these proceedings are abated. The trial court is ordered to conduct a hearing to determine relator's present financial condition and his present ability to discharge the contempt. The trial court shall make appropriate findings and recommendations and prepare a record of the proceedings.

The record so made, including any orders and findings of the trial court, shall be filed with this Court no later than 60 days from the date of this order.

It is so ORDERED.