**Ex parte Roberto A. RAMON, Relator.**

**No. 04–91–00624–CV.**

Court of Appeals of Texas,
San Antonio.

Dec. 18, 1991.

Adam Gardenas, Jr., San Antonio, for relator.

Ernest G. Valdez, San Antonio, for appellee.

Before BUTTS, CHAPA and PEEPLES, JJ.

## ON RELATOR'S APPLICATION FOR WRIT OF HABEAS CORPUS

CHAPA, Justice.

This application for writ of habeas corpus arises from an order following a motion for contempt filed by Jo Ann Cantu against her ex-husband and the relator herein, Roberto A. Ramon, for his failure to make child support payments in accordance with the terms of their divorce decree entered on April 23, 1986, pursuant to which he was obligated to pay child support payments of $350.00 per month. On October 15, 1991, a hearing on the motion was conducted, and relator was held in contempt of court for failure to make payments for the support of his minor child. From the date of the hearing on the contempt motion until November 21, 1991, when he was released on bond of $1,000.00 pending oral argument on his application for writ of habeas corpus, relator has been confined in the Bexar County Adult Detention Center.

The order at issue cited relator's failure to make the monthly child support payments and found relator guilty of contempt of court in failing and refusing to make such payments, with an arrearage on the date of the hearing in the amount of $22,-338.00. While no fine was imposed for the contempt of court, the trial court:

> further ordered that [relator] be committed to the Bexar County Jail for a period of six (6) months and *for such time thereafter until the sum of $22,338.00 is fully paid....*

The order further commanded that the Sheriff of Bexar County arrest relator and confine him in the jail "for a period of six (6) months and until he pay the sum of $22,338.00 in child support arrears."

In three points of error, relator contends in this habeas corpus proceeding that the judgment of contempt and the commitment order are void because:

(1) relator demonstrated an inability to pay the child support arrearage at the hearing on the motion for contempt;

(2) the order confines relator for the balance of his natural life; and

(3) relator was not accorded his constitutional substantive and procedural rights under the United States and Texas Constitutions, in that he was denied the opportunity at the hearing to present an

expert witness in his defense relating to his inability to pay.

It is significant that there is no specific challenge by relator to the punitive assessment by the trial court of six months of confinement for his past failure to pay child support pursuant to the divorce decree. The thrust of the challenge in this proceeding is in the relator's claim that the period of confinement is open-ended, in that he cannot purge himself of a portion of the contempt order unless he satisfies the child support arrearage in the amount of $22,338.00, and that his inability to pay the arrearage is tantamount to a sentence of confinement for the remainder of his natural life.

◼ A writ of habeas corpus is a collateral attack on the trial court's order, and it is relator's burden to demonstrate the impossibility of his performance and that the order is void. *See Ex parte Fisher*, 146 Tex. 328, 206 S.W.2d 1000 (1947); *see also Ex parte Dean*, 517 S.W.2d 365 (Tex.Civ. App.—Houston [1st Dist.] 1974, orig. proceeding). Therefore, the testimony adduced at the contempt hearing must be examined to determine if relator has discharged his burden to prove that he could not pay the child support as ordered. *Ex parte Papageorgiou*, 685 S.W.2d 776, 778 (Tex.App.—Houston [1st Dist.] 1985, orig. proceeding).

◼ The contempt order before us is both a criminal (or punitive) contempt because it imposes confinement for past violations, and a civil (or coercive) contempt, in that it provides for further confinement until relator purges himself by paying the arrearage. For this court to hold the criminal portion of the order invalid, relator must conclusively establish his inability to pay each child support payment as it accrued. *Id.* at 778; *Ex parte Cummings*, 610 S.W.2d 238, 240 (Tex.Civ.App.—Amarillo 1980, orig. proceeding). If he fails to carry that burden as to even one delinquent payment, the criminal contempt judgment is not void. *Ex parte Raymer*, 644 S.W.2d 889, 890 (Tex.App.—Amarillo 1982, orig. proceeding); *see Ex parte Townsley*, 156 Tex. 402, 297 S.W.2d 111 (1956).

◼ For this court to hold the civil portion of the order invalid, relator must conclusively establish that he is unable to pay the delinquency at the time of the contempt hearing, and that he has no source from which he might be expected to obtain the money to discharge the arrearage. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967); *see generally Ex parte Dustman*, 538 S.W.2d 409 (Tex.1976) (relator may not be confined indefinitely for contempt when he cannot perform the necessary act to purge himself). The relator must show without substantial contradiction in the record that he was unable at the time of the hearing to do the act required by the judgment as a condition for release from custody. *Ex parte Deckert*, 559 S.W.2d 847, 850 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding).

◼ We note initially that the order at issue provides that relator shall serve six months in confinement *and*, "for such time thereafter" until the delinquent child support arrearage is fully paid. A reading of the plain conjunctive language of the order demonstrates that even if relator were to now pay the child support arrearage in full, he would still be required to serve the six months of confinement in the Bexar County Jail for his contempt of the divorce decree in which the child support obligation was originally created.

Except for three incomplete child support payments totaling $412.00, which were made in the three months immediately following the divorce, relator has not made a single child support payment since June, 1986. Section 14.053 of the Texas Family Code provides, in part, that the child support order shall be based on the "net resources" of the obligor and the obligee, which shall be considered together with other factors listed in the guidelines for child support in the Code. "Net resources," for the purpose of determining child support liability, includes, in part, all wage and salary income and other compensation for personal services; unemployment benefits; and disability and workers' compensation benefits. TEX.FAM.CODE ANN. § 14.053(a), (b) (Vernon Supp.1991).

Additionally, section 14.40(g) of the Code provides that it is an affirmative defense to an allegation of contempt of court that the obligor lacked the ability to provide support in the amount ordered, "lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed, attempted unsuccessfully to borrow the needed funds, and knew of no source from which the money could have been borrowed or otherwise legally obtained." Section 14.-40(h) requires that if the issue of the existence of an affirmative defense arises, the obligor must prove the defense by a preponderance of the evidence.

On the issue of the relator's inability to pay, evidence was adduced at the contempt hearing which showed that he had owned a company with a business partner since his divorce; that he sued the partner and was awarded monetary damages in an undisclosed amount; that there were certain tax liabilities incurred with respect to a business in which he was involved. He additionally testified that a business partnership in which he was involved had a net profit of $50,000.00 per year, but claimed the profit was "an investment back into the company," and that he did not receive a split of these profits. There was testimony that he operated another business in which he had no partner and which earned $20,-000.00 per year, but this was apparently a business he ran prior to his divorce.

He also testified that for a period of time between December, 1986, and March, 1987, he was unemployed, but lived with a friend who was "helping [him] out." Between March and May, 1987, he worked for GEICO. Between May and October, 1987, he was unemployed again and supporting himself with the help of a friend. In October, 1987, he was employed by R.W. Jones, but in December, 1987, was involved in an accident when he fell from a tractor, sustaining certain injuries. As a result of these injuries, he filed a worker's compensation claim and in May, 1989, he was awarded $45,000.00, from which he netted a recovery in the amount of $27,000.00. There was also evidence that he was employed on the date of the contempt hearing working in "undercover security." At no time dur-ing the period following the divorce did relator make any child support payments, except during the three-month period of April, May, and June, 1986.

■ Relator testified that he had no house or personal property on which a loan could be secured, and he denied having "access to anyone that will make ... a personal loan." Ms. Cantu's attorney responded that under the authority of *Ex parte Mulkey*, 776 S.W.2d 308 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding), one court of appeals has held that a relator can carry his burden to prove inability to pay the child support obligation by showing "that he was unsuccessful at borrowing money from financial institutions." *Id.* at 311. While there was no specific representation by relator that he had attempted to borrow money to satisfy the arrearage, we note also that Ms. Cantu's counsel at the hearing did not attempt to elicit from him that he had tried to borrow money from a financial institution. Under the state of the record before us and the failure of Ms. Cantu's attorney to cross-examine relator in this regard, we do not find the quoted language from *Mulkey* to be solely dispositive of the issue on relator's inability to pay.

■ We do, however, find that the motion for contempt in the instant case was sufficiently specific to place relator on notice that orders of both criminal and civil contempt were sought against him. Ms. Cantu's attorney cited the recent decision in *Ex parte Johns*, 807 S.W.2d 768 (Tex. App.—Dallas 1991, orig. proceeding), in which the delineation between the two types of contempt are explained at length. A criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a contemnor for "some completed act which affronted the dignity and authority of the court." *Id.* at 771, *citing Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976). Relator's long and uncontroverted history of non-payment of child support is precisely the sort of criminal contempt of court for which the contemnor

may be punished by fine or imprisonment, or both.

*Johns, supra,* also observes that by contrast a civil contempt provides for remedial punishment. A judgment which provides that a contemnor is to be committed unless and until he performs the affirmative act required by the court's order is a civil contempt order, which is a "type of conditional penalty ... because it is designed to compel the doing of some act." 807 S.W.2d at 770. Because the contemnor can avoid incarceration by obeying the court's order, the phrase has been coined that a civil contemnor "carries the keys of his imprisonment in his own pocket." *Id. citing Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Under the record before this court, we find that the criminal contempt was clearly established under relator's history of nonpayment of child support, where his ability to have satisfied all or part of his arrearages at intervals over the period since the divorce was readily apparent from the record and where relator did not contradict the proof that he was able to satisfy the child support arrearages at various times since the divorce. We sustain relator's first point of error as to civil contempt.

We, therefore, hold valid that portion of the order requiring that relator serve six months in confinement in the Bexar County Jail for criminal contempt of court. We further find, however, that as to the civil contempt provision in the trial court's order, relator has demonstrated a present inability to pay the past child support arrearage, and therefore, we hold that portion of the contempt order unenforceable.

 With respect to the third point of error urged by relator, he argued to the trial court that the expert witness whose testimony was not permitted would "corroborate ... that he saw [relator] in October of 1988"; "that [relator] had suicidal ideations"; "that he has developed, in the doctor's opinion, serious medical complications." The doctor would supposedly have testified that in his medical opinion relator could not be gainfully employed between December 1987 at least through June 1990

when he last saw relator. According to relator's counsel, the doctor has since that time talked to relator, and it is still the doctor's opinion that relator is not capable of maintaining employment. This argument involves an evidentiary dispute that is not properly the focus of this court's inquiry in an application for a writ of habeas corpus. Instead, such a complaint is properly brought to an appeal on the merits of the case and does not warrant consideration in an extraordinary proceeding such as this.

Relator is hereby ordered remanded to the custody of the Sheriff of Bexar County to serve only the balance of the six months of incarceration imposed by the trial court for criminal contempt in its order of October 15, 1991.