expartechitsey 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AUSTIN




 




NO. 3-93-488-CV




EX PARTE: RONALD HENRY CHITSEY, 


 RELATOR






 



HABEAS CORPUS PROCEEDING FROM TRAVIS COUNTY


 



 Relator, Ronald Henry Chitsey, filed his petition for writ of habeas corpus in this
Court after the district court of Travis County held him in contempt for failure to pay child
support. See Tex. Gov't Code Ann. § 22.221(d) (West 1994); Tex. R. App. P. 120. The district
court ordered relator confined to sixty-days for past violations, placed him on four-years probation
and probated sixty-days confinement to be served in the event of any future violation of the terms
of probation.


 

BACKGROUND


 Relator and Kathleen Bown Duck divorced in January 1992. In August 1993,
relator brought a motion to modify his child support payments which he claimed were financially
burdensome. Duck counterclaimed with motions to enforce the order by contempt and to
increase child support. Duck sent the motion for enforcement by certified mail to relator's
counsel on August 26, 1993. 

 The district court heard the evidence on modification and contempt in the same
proceeding. Relator was issued a subpoena to appear at the hearing on September 7, 1993. 
Relator appeared at the hearing, was represented by counsel, and did not object to the form of
notice.

 The trial court denied relator's motion to modify and found him in contempt for
failure to pay full and timely child support for eighteen months following the divorce. The court
further found that relator had violated the divorce decree by failing to pay unreimbursed medical
expenses to Duck on several claims totalling $355.18. Finally, the court ordered relator to pay
$3500 in attorney's fees that Duck incurred in enforcing the child support order. The court also
denied petitioner's motion to increase child support payments. 

 The court orally sentenced relator to confinement for sixty days for each separate
violation, the terms to be served concurrently. Shortly after the original sentence, the judge
recalled counsel and orally modified the sentence to a period of one hundred twenty days
confinement, sixty days to be served immediately and sixty days to be probated and served only
if relator failed to comply with the conditions of his probation. The probation requires relator to
pay his current monthly child support, his medical expense arrearage, and monthly installments
toward his child support, and arrearage and the attorney's fees. The sentence, as modified, is
reflected in the written order of contempt and order of commitment.



DISCUSSION


 A writ of habeas corpus is a collateral attack on the trial court's contempt
judgment. Ex parte Rohleder, 424 S.W.2d 891, 892 (Tex. 1967); Ex parte Cummings, 610
S.W.2d 238, 240 (Tex. Civ. App.--Amarillo 1980, orig. proceeding). Before an appellate court
may order a relator's release in a habeas corpus proceeding, the relator must demonstrate that the
trial court's order is void. Ex parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980); Ex parte
Dustman, 538 S.W.2d 409, 410 (Tex. 1976); Ex parte Fisher, 206 S.W.2d 1000 (Tex. 1947),
aff'd, 336 U.S. 155 (1949). Relator challenges the validity of the order of commitment on both
statutory and due process grounds.



A. Inability to Pay

 The contempt order at issue is both criminal and civil in nature. The criminal
portion imposes confinement for past violations of the original child support order. The civil
portion provides for further confinement should relator fail to abide by the terms of his probation. 
See Ex parte Ramon, 821 S.W.2d 711, 713 (Tex. App.--San Antonio 1991, no writ) (criminal
contempt punishes prior violations of an order; civil contempt coerces future compliance). 

 In his first point of error, relator challenges the criminal portion of the order and
asserts that it was impossible for him to comply with the original terms of the divorce decree
because he was unable to pay the child support ordered. To establish this defense, relator had to
conclusively demonstrate his inability to pay each child support payment as it accrued. Id.; Ex
parte Dabau, 732 S.W.2d 773, 777 (Tex. App.--Amarillo 1987, no writ); Ex parte Papageorgiou,
685 S.W.2d 776, 778 (Tex. App.--Houston [1st Dist.] 1985, orig. proceeding); Cummings, 610
S.W.2d at 240. As a practical matter, relator had to demonstrate that he could not make each
payment as it became due. Ramon, 821 S.W.2d at 713; Ex parte Raymer, 644 S.W.2d 889, 890
(Tex. App.--Amarillo 1982, orig. proceeding). 

 The Texas Family Code sets forth four factors which a relator must establish by
a preponderance of the evidence to defend successfully a contempt action because of inability to
pay: that obligor (1) lacked the ability to provide support in the amount ordered; (2) lacked
property that could be sold, mortgaged, or otherwise pledged to raise the funds needed; (3)
attempted unsuccessfully to borrow the needed funds; and (4) knew of no source from which the
money could have been borrowed or otherwise legally obtained. Tex. Fam. Code Ann.
§ 14.40(g), (h) (West Supp. 1994); Ex parte Bregenzer, 802 S.W.2d 884, 887 (Tex.
App.--Houston [1st. Dist.] 1991, orig. proceeding). Should a relator fail to carry his burden as
to even one delinquent payment, the contempt judgment remains valid. Ramon, 821 S.W.2d at
713; Dabau, 732 S.W.2d at 777. 

 Relator here failed to show that he could not pay each child support payment as it
became due. For each month that relator made either late or partial child support payments,
relator's bank account balances revealed that he could have paid the amount due. The evidence
also shows that relator used cash to pay for hunting trips, fishing equipment, and seasonal athletic
trips rather than to pay child support. Further, relator testified that he did not attempt to borrow
funds to meet his child support obligations. Relator had several credit lines available through his
credit cards by which he could have borrowed money to pay the child support. Relator also failed
to show that he knew of no source from which to borrow the funds. Relator lives with his parents
and borrows money from them on a regular basis. Because relator failed to prove impossibility
of performance on the monthly child support payments, the contempt order remains valid. We
overrule relator's first point of error.



B. Net Resources Finding

 Relator next argues that he was denied due process when the trial court did not
make findings pursuant to section 14.057 of the Family Code. Upon the request of a party, the
court must make findings regarding the monthly financial resources of the parties to an original
child support order or its subsequent modification. Tex. Fam. Code Ann. § 14.057(a) (West
Supp. 1994).

 The issue before the trial court was the motion to enforce. Section 14.057 does not
apply to motions to enforce child support. Section 14.33(a) of the Family Code lists the findings
an enforcement order must contain. Tex. Fam. Code Ann. § 14.33(a) (West Supp. 1994); see Ex
parte Stanley, 826 S.W.2d 772 (Tex. App.--Dallas 1992, no writ); Ex Parte Waldrep, 783 S.W.2d
332 (Tex. App.--Houston [14th Dist.] 1990, no writ). Relator does not contend that the contempt
order does not comply with section 14.33(a). We overrule relator's second point of error.



C. Improper Service of Process

 Relator next argues that the contempt judgment is void because he received
insufficient notice. In a motion for enforcement, notice must be served personally. Tex. Fam.
Code Ann. § 14.314(b) (West Supp. 1994). Relator contends that because he was only issued
a subpoena, he lacked proper notice of the contempt hearing and he was denied due process. 

 Relator's complaint presents a procedural irregularity rather than a due process
claim of insufficient notice. The trial court record shows that relator appeared at the hearing, was
represented by counsel, and participated in the trial. Relator's appearance at the contempt hearing
purged any procedural irregularity in the service of process. Ex parte Linder, 783 S.W.2d 754,
758 (Tex. App.--Dallas 1990, no writ); Dabau, 732 S.W.2d at 776; Cummings, 610 S.W.2d at
242; see also Tex. R. Civ. P. 120 ("The defendant may, in person . . . enter an appearance in
open court. Such appearance shall . . . have the same force and effect as if the citation had been
duly issued and served as provided by law.")

 Even had relator failed to appear at the hearing, relator's notice of the hearing was
sufficient to satisfy due process. Due process requires that a contemnor be personally served,
receive notice through an equivalent legal process, or that it be established that contemnor had
knowledge of such order. Ex parte Vetterick, 744 S.W.2d 598, 599 (Tex. 1988) Ex parte
Blanchard, 736 S.W.2d 642, 643 (Tex. 1987); Ex parte Gordon, 584 S.W.2d 686, 688 (Tex.
1979); Ex parte Edgerly, 441 S.W.2d 514, 516 (Tex. 1969). 

 Relator was served with both a motion for enforcement and a subpoena. A motion
to enforce by contempt was sent by certified mail to relator's attorney on August 26, 1993, more
than two weeks before the hearing. This enforcement action was a counterclaim to an original
motion to modify that relator himself brought. He was issued a subpoena for the hearing on the
day of the hearing, September 7, 1993. At the hearing, relator was questioned about his
knowledge of each violation of the order and his understanding of the violations; he had an
opportunity to defend himself. We find that relator's notice was sufficient to satisfy due process. 

 Finally, even if relator lacked sufficient notice of the contempt proceedings or
knowledge of their contents, relator waived this point of error after appearing at the hearing
because he failed to object to the notice at trial. Linder, 783 S.W.2d at 759 (citing Ex parte
Boyle, 545 S.W.2d 25, 27 (Tex. Civ. App.--Houston [1st Dist.] 1977, orig. proceeding)). We
overrule relator's third point of error.



D. Amended Sentence of Civil Contempt

 Relator next contests the civil portion of the order. Relator claims he was denied
due process because the trial court modified the initial oral sentence to include an additional sixty
days of confinement should relator fail to comply with the order in the future or violate his
probation. Relator claims he was denied due process when he was denied an opportunity to
present evidence contrary to the additional sentence. We disagree.

 A judge may modify an oral judgment by signing a written judgment that differs
from the oral one. Dudley v. State for Dudley, 730 S.W.2d 51, 56 (Tex. App.--Houston [14th
Dist.] 1987, no writ) (due process not denied when judge originally announced that chemically
dependent appellant was to be treated on an outpatient basis and then signed judgment ordering
treatment on an inpatient basis); see also Ex parte Mathis, 822 S.W.2d 727, 732 (Tex.App.--Tyler
1991, orig. proceeding) (noting that a trial court's assertions are overridden by written orders). 
If a judge may modify an oral judgment by written order, then he may orally modify any oral
pronouncements not yet reduced to a written, signed order. Moreover, both the written order of
commitment and the writ of commitment conform to the amended oral order. The contempt
judgment remains valid. 

 Furthermore, absent a motion for new trial, a trial court retains plenary power to
vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. 
Tex. R. Civ. P. 329b(d); Philbrook v. Berry, 683 S.W.2d 378, 379 (Tex. 1985); First Alief Bank
v. White, 682 S.W.2d 251, 252 (Tex. 1984). Here, the trial judge modified the original judgment
on the same day as the original sentence. The judge acted within his plenary power. We overrule
relator's fourth point of error.



E. Attorney's Fees

 In his fifth point of error, relator claims that the civil portion of the contempt order
is void because it requires that he pay Duck's attorney's fees. Relator asserts that this part of the
order is unconstitutional because should he fail to comply he could be imprisoned for failing to
pay a debt. Tex. Const. art. I, § 18. 

 Relator brings this point of error prematurely. Relator is currently ordered
confined for violating the original child support order, not for failure to pay the court-ordered
attorney's fees. If relator fails to pay the attorney's fees in the future and he is then incarcerated
for violating his probation, relator may file another petition for writ of habeas corpus. See Ex
parte Occhipenti, 796 S.W.2d 805, 810 (Tex. App.--Houston [1st Dist.] 1990, orig. proceeding).

 We note, however, that attorney's fees may be awarded to enforce a child support
order without violating the Texas Constitution. Ex parte Helms, 259 S.W.2d 184, 188 (Tex.
1953); Ex parte Wessell, 807 S.W.2d 17, 20 (Tex. App.--Houston [14th Dist.] 1991, orig.
proceeding); Ex parte McManus, 589 S.W.2d 790, 792 (Tex. Civ. App.--Dallas 1979, orig.
proceeding.) Public policy imposes an obligation upon parents to support their children. Ex parte
McManus, 589 S.W.2d at 792 (citing Ex parte Helms, 259 S.W.2d at 188). Rather than view this
obligation as a debt, public policy considers it a parent's duty. Id. When attorney's fees and
costs are necessary to enforce this duty, they are not considered a debt. Id. We overrule relator's
fifth point of error.



F. Terms Not Vague 

 In his final point of error, relator claims he was denied due process before being
held in contempt because the uninsured medical expense provision of the original divorce decree
was vague and ambiguous. We find the provision clear on the face of the decree. The relevant
provisions for the unreimbursed medical expenses under the decree are as follows:



RONALD HENRY CHITSEY is ORDERED AND DECREED to pay as
additional child support . . . promptly upon presentation of a copy of the bill, fifty
percent (50%) of all health care expenses, including without limitation, medical,
surgical, hospitalization, psychiatric, counselling, chiropractic, psychological,
prescription drug, therapeutic cosmetic surgery, eyeglasses and contact lenses,
periodontal, dental orthodontal and ophthalmological charges which are not paid
by insurance . . . . 


IT IS ORDERED AND DECREED that reasonableness of the charges shall be
presumed upon presentation of the bill. KATHLEEN BOWN CHITSEY is
ORDERED AND DECREED to make an accounting to RONALD HENRY
CHITSEY of all health care expenses incurred on behalf of the parties' children or
any of them, and KATHLEEN BOWN CHITSEY shall furnish RONALD HENRY
CHITSEY a copy of said statements and bills for such health care expenses. 
RONALD HENRY CHITSEY is ORDERED AND DECREED to pay fifty percent
(50%) of all the expenses indicated by said statements and bills provided by
KATHLEEN BOWN CHITSEY within fifteen (15) days of his receipt thereof . .
. . 



 To support a contempt judgment, the underlying decree must set forth the terms
of compliance in clear, specific, and unambiguous terms so that the person charged with obeying
the decree will know exactly what duties are imposed upon him. Ex parte MacCallum, 807
S.W.2d 729, 730 (Tex. 1991); Ex parte Blasingame, 748 S.W.2d 444, 446 (Tex. 1988); Ex parte
Slavin, 412 S.W.2d 43, 44 (Tex. 1967). The decree specifies the documentation that will satisfy
an accounting and sets forth a definite period for payment after presentation of uninsured medical
bills. Unlike the divorce decree struck down in Ex parte Shelton, the decree here provides an
accounting procedure, defines the medical expenses covered, and creates a presumption of
reasonableness. See Ex parte Shelton, 582 S.W.2d 637, 638 (Tex. Civ. App--Dallas 1979, orig.
proceeding).

 Further, the evidence shows that relator was provided a complete accounting. 
Duck supplied relator with copies of each statement for health care expenses incurred on behalf
of the children and insurance documents outlining charges not covered by insurance. The court
found that the documentation was sufficiently clear to require relator to pay the $355.18
demanded. Once relator received copies of the medical bills and evidence that they were not
covered by insurance, he knew he was under an obligation to pay his share of the costs within
fifteen days. A court order need not be "full of superfluous terms and specifications adequate to
counter any flight of fancy a contemner may imagine in order to declare it vague." Blasingame,
748 S.W.d at 446 (quoting McManus, 589 S.W.2d at 793); see also Ex parte Karr, 663 S.W.2d
534, 537 (Tex. App.--Amarillo 1983, orig. proceeding) ("[I]t long has been the law that one may
not place a questionable or technical construction upon an order and then act upon that
construction with impunity."). Relator's sixth point of error is overruled.



CONCLUSION


 Relator's application for writ of habeas corpus is denied and relator is ordered
remanded to the custody of the sheriff of Travis County to serve the remainder of his sentence for
criminal contempt. 



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith


Relator Ordered Remanded


Filed: March 30, 1994


Do Not Publish