**DENIED and Opinion Filed January 3, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00687-CV

### IN RE GAYLE RENE ROGERS GARCIA, Relator

**Original Proceeding from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-14-16977**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

Relator Gayle Rene Rogers Garcia has filed an application for writ of habeas corpus challenging the trial court's order holding her in criminal contempt and confining her for 100 days for willfully failing to pay child support owed to her ex-husband, Charles Garcia. After relator was held in contempt, her family paid her arrearages but the trial court would not relent on its contempt order. This Court granted relator emergency relief and she bonded out of jail. The Court requested a response from the respondent and real party in interest but none has been filed. After considering the record and relator's contentions, we deny relief.

During the May 3, 2019 contempt hearing, evidence was admitted showing the trial court ordered relator to pay Garcia $205 per month in child support and $113 per month in medical reimbursement starting in 2017. Garcia testified relator had never made any payments under the order. Garcia had not spoken to relator since 2016 and could not offer an opinion as to whether she was mentally competent or what her income might be. He did opine he thought she could pay

the child support because she was capable of working and she had texted him a photograph of her in a new car. The State admitted into evidence a pay schedule showing relator owed $7,905.96 in overdue child support and $2,842.59 in overdue medical support payments.

The defense called licensed professional counselor Karol Wade Wright and relator's father Ricky Rogers. Wright testified she had worked with relator in 2016 on a previous case and had counseled her on life skills. Rogers re-engaged Wright to work with relator in October 2018 for additional counseling and to testify in relator's legal cases. Rogers paid Wright a $5,000 retainer for her services.

Both Wright and Rogers testified relator had been hospitalized three times during the past year for mental disorders. The trial court would not allow Wright to testify in depth about relator's mental health issues, but did allow Rogers to testify relator suffers from Tourette's Syndrome, manic-depressive and bipolar disorders, schizophrenia, and PTSD. Wright and Rogers testified relator had a "psychotic episode" in Wright's office when they were preparing for the hearing. Rogers testified relator "left the building screaming and yelling and upset about things that [Garcia] had done to her." Later that evening, relator was arrested for driving while intoxicated. Wright and Rogers agreed relator is a drug addict. When the trial court queried counsel about whether relator had applied for disability, counsel admitted relator's disability claim had been denied, but she had resubmitted an application.

Rogers testified relator's mental condition renders her unable to hold a regular job. Relator is trained as a cosmetologist but Rogers does not think she could work in that occupation. Rogers had tried unsuccessfully to employ her at his veterinary clinic and he had set up a hairstyling salon on the premises for relator which failed. Rogers testified he owns the car in the photograph relator sent to Garcia and relator drives an older vehicle. Rogers testified he pays all of relator's bills. He believes relator is disabled and he supports her as a parental obligation. Rogers testified he would

probably bail relator out of jail on her DWI case after the hearing, he would pay for her bond in the present proceeding, and he would pay for her attorney. Rogers would not agree to pay relator's child support obligation for his grandson due to "his father's behavior." Rogers admitted relator does drugs and finds money to pay for them. Relator met Garcia when they were both in a prison drug treatment program.

After hearing the testimony, the trial court found relator had not shown her lack of ability to pay support because there was no testimony that she had attempted unsuccessfully to borrow money or that she did not know of any source from which the money could be legally obtained. The trial court held relator in contempt, ordered her confined for 100 days, and ordered her to pay the overdue amounts at a rate of $75 per month for support and $25 per month for the medical support. Her family paid the arrearages and arranged for her bond after this Court granted temporary relief.

## Applicable Law

An original application for writ of habeas corpus may be filed to collaterally attack a contempt judgment. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). In evaluating relator's writ application, we presume the challenged contempt judgment is valid and relator bears the burden of showing her entitlement to relief. *See Ex parte Occhipenti*, 796 S.W.2d 805, 808–09 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding).

A criminal contempt order punishes for a "completed act which affronted the dignity and authority of the court." *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). The punishment imposed may include a fine and imprisonment and it cannot be avoided by subsequent voluntary compliance with the trial court's orders. *Ex parte Johns*, 807 S.W.2d 768, 771 (Tex. App.—Dallas 1991, orig. proceeding). To hold someone in criminal contempt, there must be proof beyond a reasonable doubt that (1) there is a reasonably specific order; (2) a violation of the order; and (3)

willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). We may infer noncompliance is willful if relator fails to comply with an unambiguous order of which she has notice. *Id.* at 261. Relator may raise a defense that noncompliance was involuntary, but she bears the burden to show her inability to comply. *Id.*

To prove the affirmative defense of inability to pay, relator must show she: (1) lacked the ability to provide support in the amount ordered; (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed; (3) attempted unsuccessfully to borrow the funds needed; and (4) knew of no source from which the money could have been borrowed or legally obtained. TEX. FAM. CODE ANN. §157.008(c). Relator bears the burden to prove her affirmative defense by a preponderance of the evidence. *See* TEX. FAM. CODE ANN. §157.006(b); *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex. 1994) (orig. proceeding). To establish her affirmative defense, relator must show conclusively she was unable to pay each obligation as it accrued. *Ex parte Ramon*, 821 S.W.2d 711, 713 (Tex. App.—San Antonio 1991, orig. proceeding).

### Analysis

The trial court heard Garcia's opinion that relator could work and Wright's and Roger's opinions that relator was too mentally ill to work. Relator complains that Wright was not allowed to testify further and give opinion evidence about relator's conditions based on relator's medical records. Nevertheless, the trial court did allow Wright to testify relator has been hospitalized three times in the past year and was her patient for counseling and in group therapy. It also allowed Rogers to testify about relator's alleged mental illnesses.

In her new affidavit submitted with the petition, Wright contends relator "could not knowingly or intentionally violate a court order requiring her to pay support, because she was and is completely unable to engage in gainful employment," is unable to support or care for herself, and is unable to manage money. The affidavit does not, however, address the trial court's primary

findings that relator failed to show she could not borrow or obtain the necessary funds from a legal source—her family. TEX. FAM. CODE ANN. §157.008(c)(3-4). Relator's petition concedes the family paid the entire arrearage immediately upon relator's confinement for contempt.

Relator also complains she was not allowed to cross-examine Garcia about (1) an affidavit he filed in 2016 during their child custody proceeding in which he alleged she had been hospitalized for prescription drug abuse and was unable to take care of herself and (2) Garcia's extensive criminal history. Garcia's opinion about whether relator was competent enough to work and his credibility are collateral issues in this case. The trial court did not find relator could work. The trial court based its ruling on relator's failure to show she could not borrow the money or obtain it from a legal source. *Id.*; *In re Mancha*, 440 S.W.3d 158, 167 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding) (indigent mother did not satisfy affirmative defense where she failed to show she could not have paid support during period when she was employed and did not show she attempted to borrow from a financial institution to pay child support).

### Conclusion

The evidence shows relator failed to meet her burden to show she could not have borrowed the money she needed or obtained it from a legal source. Thus, she failed to prove the affirmative defense of inability to pay. *See* TEX. FAM. CODE ANN. §157.006(b); *Roosth*, 881 S.W.2d at 301; *Ramon*, 821 S.W.2d at 713. We conclude relator has not shown she is entitled to habeas relief. *See Occhipenti*, 796 S.W.2d at 808–09.

We deny relator's petition for writ of habeas corpus and vacate the temporary relief granted in our order entered on June 21, 2019.

/Bill Pedersen, III//

BILL PEDERSEN. III
JUSTICE

190687f.p05