

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-26-00285-CV

_____

IN RE SALMAN ALI, Relator

_____

Original Proceeding
481st District Court of Denton County, Texas
Trial Court No. 23-4984-481

_____

Before Walker, J; Sudderth, C.J.; and Wallach, J.
Memorandum Opinion on Rehearing by Justice Walker

**MEMORANDUM OPINION ON REHEARING**

We deny Relator Salman Ali's motion for rehearing, withdraw our May 20, 2026 opinion, and issue this opinion in its place. Our disposition, however, remains the same.

Ali filed this petition for writ of habeas corpus after the trial court found him in contempt for not paying child support and ordered him confined for 180 days or until he paid his child support, whichever occurred first. Ali maintains that he both pled and proved an inability to pay child support and was thus entitled to habeas relief. *See* Tex. Fam. Code § 157.008(c).

In our original opinion, we held that the trial court had heard conflicting testimony and that Ali had failed to persuade the trial court. On rehearing, Ali maintains that neither the trial court nor this court had any conflicting evidence to consider. We disagree, deny Ali's motion for rehearing, but elaborate on our analysis.

## I. DISCUSSION

Ali was required to pay $5,430 per month in child support. The children's mother filed a motion for enforcement seeking $57,158.90 in child support arrearages and $10,341.24 in attorney's fees. Ali filed an answer in which he asserted the affirmative defense of inability to pay. *See id.* After an evidentiary hearing, the trial court found Ali in contempt and ordered him confined for 180 days or until he paid

the $57,158.90 in child support and the $10,341.24 in attorney's fees, whichever occurred first.[1]

We agree that Ali pled an inability to pay child support and put on evidence of an inability to pay child support. He provided his tax returns for 2023 (adjusted gross income of $73,560), 2024 (adjusted gross income of $22,453), and 2025 (adjusted gross income of negative $32,259[2]). He testified that the ex-business partners from whom he had borrowed money in the past were no longer willing to lend him money. Ali explained that his credit score was 455, and although he had applied for personal loans, he had not been successful. Ali maintained that he had filed for bankruptcy.[3] Thus, there was evidence of Ali's inability to pay.

But Ali's evidence was not the only evidence that the trial court heard. The children's mother presented controverting evidence that Ali had secreted away hundreds of thousands of dollars.

## A. THE CHASE BANK ACCOUNT

The children's mother presented evidence that from January 19, 2024, through February 28, 2025, Ali deposited $263,146.90 into his Chase bank account; this meant

---

[1]The trial court's order is based on the children's mother's February 2, 2026 "First Supplemental Amended Motion for Enforcement of Child Support Order." Our record does not contain this document.

[2]In his petition and in his motion for rehearing, Ali asserts that the adjusted gross income was a negative $35,259.

[3]Ali provided no documentation supporting his assertion that he had filed for bankruptcy.

that over a period of thirteen months, Ali was making an average deposit of $20,242.07 per month from an unknown source. Ali argues that these deposits cannot be considered as controverting evidence of inability to pay child support. He explains that he was found in contempt for not paying child support after February 28, 2025, and that all of these deposits predate February 28, 2025.[4] Therefore, he concludes that these deposits are not evidence of his ability to pay child support after February 28, 2025. We disagree. Ali does not explain why this money would vanish as a resource as of February 28, 2025. Although the $263,146.90 was not earned after February 28, 2025, a factfinder could reasonably conclude that it—or at least a portion of it—was still available to pay child support after February 28, 2025. *See Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex. App.—Dallas 1994, orig. proceeding). Thus, the trial court could consider the $263,146.90 in Ali's Chase bank account as controverting evidence.

## B. BRANCH HOMES

The children's mother also testified that Ali transferred almost $1 million to Branch Homes[5] and that Ali had a "capital account and/or loan account" at Branch Homes in excess of half a million dollars that he forfeited back to Branch Homes on

---

[4]Although we do not have the motion on which the contempt order is based, from the testimony, the relevant period is from February 28, 2025, until March 31, 2026.

[5]Although not stated explicitly, contextually, Branch Homes was one of Ali's businesses.

December 31, 2024. Ali never testified that the money was used to settle any debts, and he refused to answer discovery, so why Ali made Branch Homes the beneficiary of approximately $1.5 million was not explained. A factfinder could reasonably conclude that these were not altruistic donations to Branch Homes, *see id.*, and therefore include the $1.5 million within the controverting evidence.

### C. THE CHILDREN'S MOTHER'S SUIT AGAINST ALI AND THE $75,000 SETTLEMENT

In addition to the above examples, the children's mother testified that she had sued Ali for (1) taking the $500,000 proceeds from selling their house to purchase a lot in Branch Homes's name and (2) taking cash inventory and other assets from a company that they owned and transferring the cash and assets to his other business partners. She said that the suit had settled in 2024, and from that settlement, Ali was supposed to receive $75,000.

The parties addressed what Ali did with his $75,000 settlement at the hearing, and Ali specifically addressed it again in his petition and in his motion for rehearing. In Ali's petition and in his motion for rehearing, he argues that the trial court could not consider the $75,000 as evidence controverting his claim of inability to pay child support because he testified at the hearing that he had used that money to pay his attorney's fees.

Although Ali testified at the hearing that he had used the money to pay his attorney's fees, the trial court was not precluded from considering that $75,000 as

5

controverting evidence. Implicit in Ali's argument is that the trial court was required to believe him. Ali is mistaken. The trial court was within its discretion as the factfinder to disbelieve him.[6] *See id.* Ali did not provide any receipts. Thus, whether Ali used that money to pay his attorney's fees depended entirely on his credibility. Based on the trial court's ruling, it disbelieved him, which meant that the $75,000 fell into the category of controverting evidence.

## II. CONCLUSION

For our purposes, we hold that the trial court had ample controverting evidence to support its ruling that Ali had not met his burden of showing an inability to pay his child support. *See id.* at 17, 20; *Ex parte Ramon*, 821 S.W.2d 711, 713 (Tex. App.—San Antonio 1991, orig. proceeding). We deny Ali's motion for rehearing, deny his petition for writ of habeas corpus, and vacate the portion of our May 7, 2026 order providing for his discharge on the execution and filing of a bond in the amount of $100,000.

/s/ Brian Walker

Brian Walker
Justice

Delivered: June 10, 2026

---

[6]When asked whether Ali had used the money to pay his attorney's fees, Ali's answer contradicted itself. Ali's attorney asked him, "[D]id you pay attorneys' fees for all of these lawsuits out of your 75,000?" Ali responded, "No. Yes. I paid -- I paid attorney fees."