**Ex parte Konstantinos PAPAGEORGIOU.**

No. 01–84–0827–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 7, 1985.

 

Rod Borlase, Houston, for relator.

Jo Nelson, Houston, for respondent.

### OPINION

DUGGAN, Justice.

**Original Proceeding on Writ of
Habeas Corpus**

Relator, Konstantinos Papageorgiou, complains that he has been illegally confined by the Sheriff of Harris County by virtue of an order of commitment issued by the Judge of the 312th Judicial District Court.

On December 18, 1984, the trial court found relator in contempt of its order of January 27, 1984, to pay child support. He was ordered confined to jail for 20 days, and thereafter until such time as he could purge himself of contempt by paying $6,175 in child support, $1000 in attorney's fees, and courts costs. We granted leave to file this writ of habeas corpus on December 27, 1984, and ordered relator released

from jail on bond pending final determination of the matter.

■ Relator first argues that his confinement is illegal because he was unable to pay his arrearage. A writ of habeas corpus is a collateral attack on the trial court's order, and it is relator's burden to demonstrate the impossibility of his performance and that the order is void. *See Ex parte Fisher*, 146 Tex. 328, 206 S.W.2d 1000 (1947); *see also Ex parte Dean*, 517 S.W.2d 365 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Therefore, we must examine the testimony adduced at the contempt hearing to determine if relator has discharged his burden to prove that he could not pay the child support as ordered.

The contempt order is both a criminal or penal contempt (20 days confinement), and a civil or coercive contempt (further confinement until relator purges himself by paying the arrearage). For this court to hold the criminal portion of the order invalid, relator must conclusively establish his inability to pay each child support payment as it accrued. *Ex parte Cummings*, 610 S.W.2d 238 (Tex.Civ.App.—Amarillo 1980, no writ). If he fails to carry that burden as to even one delinquent payment, the criminal contempt judgment is not void. *Ex parte Raymer*, 644 S.W.2d 889 (Tex. App.—Amarillo 1982, no writ); *see Ex parte Townsley*, 156 Tex. 402, 297 S.W.2d 111 (1956). For this court to hold the civil portion of the order invalid, relator must conclusively establish that he is unable to pay the delinquency at the time of the contempt hearing, and that he has no source from which he might be expected to obtain the money to discharge the arrearage. *Ex parte Rohleder*, 424 S.W.2d 891 (Tex.1968); *see generally Ex parte Dustman*, 538 S.W.2d 409 (Tex.1976) (one may not be confined indefinitely for contempt when the relator cannot perform the necessary act to purge himself).

■ Where the party charged with contempt claims that he was financially unable to make the required payment, ordinarily he must establish 1) that he lacked sufficient personal or real property which could be sold or mortgaged to raise the needed sum; 2) that he had unsuccessfully attempted to borrow the sum from financial institutions; 3) and that he knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured. *Ex parte Hennig*, 559 S.W.2d 401, 402 (Tex.Civ.App.—Dallas 1977, no writ). He must show without substantial contradiction in the record that he was unable at the time of the hearing to do the act required by the judgment as a condition for release from custody. *Ex parte Deckert*, 559 S.W.2d 847 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ).

Relator has filed a statement of facts containing his testimony given at the contempt hearing. He testified that he is employed by Houston Ship, Inc., a marine repair and cleaning service of which he owns 16%. He stated that he has received no salary from the company since February 7, 1984, and that he does not own any real property or anything of value that could be sold or used as collateral. (His 16% interest in the company is already collateral for another loan made to him by one of his business partners). Relator further testified that he was personally liable for a $350,000 corporate debt to Lockwood Bank and that he has over $40,000 in outstanding judgments which he has been unable to satisfy.

However, relator drives a 1983 Datsun car that is owned by the corporation, his gasoline bills are paid by the corporation, and his new wife pays the remainder of his expenses from her income. Relator testified that he had asked one of his business partners for a loan and had been turned down. He did not ask any of his other partners, friends, or relatives for financial assistance, nor had he attempted to borrow the money for his child support from any banks or other lending institutions. There was contradicting evidence as to whether relator asked his present wife for the money.

Relator testified that he had been continuously employed since the time of the divorce for a corporation that he owned in

part, and had been working extremely hard, sometimes six or seven days per week, sometimes 24 hours a day, yet he had received no salary since February 1984. Despite the court's order to pay $675 per month in child support, relator indulged in working for an allegedly indigent corporation, rather than seeking salaried employment elsewhere.

■ On the basis of the record before this court, relator has not conclusively demonstrated his inability to comply with the court's order each time the $675 payment came due, nor has he met his burden of showing his inability to pay the arrearage at the time of the contempt hearing. His first point of error is overruled.

Relator's next point urges error because the trial court did not make specific findings as to each act of contempt, but rather holds him in contempt for failing to pay child support. The order finds relator was charged with contempt in failing and refusing to comply with the

> judgment/order of this Court entered on or about the 27 day of January, 1984, wherein the Court ordered her/him to pay the sum of $675.00 each month on the 1st day of each month to Diane G. Papageorgiou for the support of Michael C. Papageorgiou, minor ... and finds that [relator] is guilty of contempt of this Court in that he has failed and refused to pay child support as hereto before ordered in an amount of $6,175.00.

■ A court may charge in one contempt order an aggregate contempt composed of individual acts specified in the motion for contempt, *Ex parte Genecov*, 143 Tex. 476, 186 S.W.2d 225 (1945), so long as the relator received sufficient notice of the acts alleged to have been in violation of the prior court order. *See, e.g., Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967). Similar to an indictment in a criminal case, the motion for contempt or show cause order must give fair notice of the specific matters alleged against the defendant. *Ex parte Pyle*, 134 Tex. 148, 133 S.W.2d 565 (1939).

■ We note initially that relator has failed to provide us with the court's order of January 27, 1984, the motion for contempt, or the show cause order. We have only a statement of facts from the contempt hearing and the contempt judgment/commitment order in the record. That order states specifically what prior court order was at issue, the means by which relator has violated the order, and spells out the terms of compliance. *Ex parte Kottwitz*, 117 Tex. 583, 8 S.W.2d 508 (1928). It was not necessary for the order to make specific findings as to each contemptuous act.

■ Relator does not attack any of the acts singularly on any basis other than his inability to pay, and we have overruled that point above. Additionally, relator stipulated to the amount of the arrearage at the contempt hearing. Thus, the evidence from the contempt hearing supports the judgment, indicating that relator was in arrears in his court-ordered support obligation and that appropriate credit had been given. *But see Ex parte Proctor*, 398 S.W.2d 917 (Tex.1966) (no recitation of arrearage). Relator's second point is overruled.

■ In relator's third point of error he contends that he is illegally confined, because the trial court failed to inquire whether relator desired a jury since he was charged with a "serious" offense. The right to a jury trial is guaranteed only for serious offenses, not for petty offenses. *Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975). Cases of criminal contempt where the sentence does not exceed six months do not constitute "serious" offenses. *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). Further, the right to a jury trial in contempt proceedings is dependent solely on the actual punishment imposed, rather than the punishment possible. *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974). Punishment for contempt that does *not* impose significant confinement may still be a "serious" offense meriting a jury trial if the

court has imposed other sanctions such as a large fine. *Compare Ex parte Griffin,* 28 Tex.Sup.Ct.J. 178 (Dec. 19, 1984) *with Ex parte Werblud,* 536 S.W.2d 542, 547 (Tex.1976) ($104,000 fine is serious offense, two $500 fines held petty). In this case, relator was ordered confined for only 20 days and no fine was imposed. We do not find this to fall within the category of a serious offense, and the trial court did not err in failing to inquire whether relator desired a jury trial. Relator's third error is overruled.

Relator's final point of error complains that the show cause order was defective because it did not give relator notice of possible confinement. We are unable to consider this point because the show cause order is not before us.

The trial court's order is valid, and relator's application for writ of habeas corpus is denied. He is remanded to the custody of the Sheriff of Harris County to serve the remainder of his ordered confinement.

WARREN and HOYT, JJ., also sitting.