

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00032-CR

_____

EX PARTE:  PHILLIP WAYNE SIMPSON

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 20461

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

In 2002, Phillip Wayne Simpson pled guilty to aggravated sexual assault and was placed on deferred community supervision pursuant to a negotiated plea agreement. In 2007, Simpson filed an application for writ of habeas corpus[1] in which he challenged the voluntariness of that guilty plea. Simpson contends that he received ineffective assistance of counsel at the time of the 2002 guilty plea because his trial counsel did not assert the defense that the trial court lacked jurisdiction to render a decision in the case because the case's transfer from juvenile court had arguably been improper. The trial court conducted a full hearing on Simpson's application and denied relief. Simpson now appeals that decision.

After thoroughly reviewing the record, and upon careful consideration of the briefs from both sides, we conclude that the conduct of Simpson's trial counsel at the 2002 guilty plea hearing was consistent with his reasoned trial strategy—of which the record shows Simpson approved in 2002. Therefore, for the reasons set forth below, we affirm the trial court's decision to deny Simpson's application for habeas corpus relief.

## I.      Jurisdiction

Habeas corpus applications filed after a felony defendant has been adjudged guilty and sentenced to a term of incarceration are filed with the trial court and made returnable directly to the Texas Court of Criminal Appeals. TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2007);

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 11.08 (Vernon 2005) (pretrial application for writ of habeas corpus).

2

*Ex parte Ybarra*, 629 S.W.2d 943, 945–46 (Tex. Crim. App. 1982); *State ex rel. Wilson v. Briggs*, 171 Tex. Crim. 479, 351 S.W.2d 892, 894 (1961). This process bypasses any review by an intermediate appellate court.

By contrast, habeas applications filed during the pendency of either a revocation or an adjudication proceeding (as is the situation in Simpson's case) are returnable to the trial court, and that ruling is reviewable upon appeal by an intermediate court of appeals (which is, in turn, subject to discretionary review by the Texas Court of Criminal Appeals). *Nix v. State*, 65 S.W.3d 664, 669 n.22 (Tex. Crim. App. 2001) (citing *Rodriquez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 557–59 (Tex. Crim. App. 1989)); *Ex parte Gray*, 126 S.W.3d 565, 568 n.3 (Tex. App.—Texarkana 2003, pet. dism'd, untimely filed); *see* TEX. CODE CRIM. PROC. ANN. art. 11.072 (Vernon 2005) (post-adjudication and pre-revocation), art. 11.08 (pre-adjudication).

Because the trial court deferred a finding of guilt following Simpson's 2002 guilty plea, and because the trial court has not subsequently entered such a finding, Simpson has never been formally convicted of the offense to which he pleaded guilty in 2002. *See generally* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(c) (Vernon Supp. 2007) (except as provided by law, deferred adjudication is not "conviction" unless or until trial court formally enters order adjudicating guilt). A criminal defendant who has been indicted for an offense, but whose guilt has not been formally adjudicated, may file an application for writ of habeas corpus that is returnable to the court in which the accused stands indicted. TEX. CODE CRIM. PROC. ANN. art. 11.08.

**II.    Standards for Reviewing Claims of Ineffective Assistance Made Pre-Adjudication**

We review a trial court's decision concerning an Article 11.08 habeas application "in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003)).  A trial court abuses its discretion if that decision falls outside the wide range of reasonable disagreement or if that decision is made without reference to guiding rules or principles of law.  *Ex parte Alakayi*, 102 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (applying abuse of discretion in Article 11.08 habeas case); *see generally McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007) (generally defining standard of abuse of discretion).  In the case at bar, the trial court held Simpson's 2002 trial attorney did not provide ineffective assistance of counsel as guaranteed by our Federal Constitution,[2] a conclusion Simpson now contends constitutes an abuse of discretion.

To render reasonably effective assistance, an attorney must have firm command of the facts of the case and the governing law.  *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990); *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983).  "It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has

---

[2]Simpson's original application did not raise an additional, companion challenge to his continued confinement under the Texas Constitution.  Accordingly, we need not address whether Simpson's continued confinement is illegal under the Texas Constitution. *See generally Hernandez v. State*, 726 S.W.2d 53, 54–56 (Tex. Crim. App. 1986) (considering whether Article I, Section 10 of Texas Constitution provides greater protection for defendant beset by ineffective assistance than protection provided under *Strickland*). *See Strickland v. Washington*, 466 U.S. 668 (1984).

4

conducted the necessary legal and factual investigation which would enable him to make an informed rational decision." *Welborn*, 785 S.W.2d at 393 (citing *Ex parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980)). "Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial." *Gonzalez v. United States*, 128 S.Ct. 1765 (2008).

To succeed on appeal in raising a claim that one's trial counsel provided ineffective assistance, a habeas applicant must demonstrate by a preponderance of the evidence (1) that counsel's representation fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced appellant's defense. *Strickland*, 466 U.S. at 687; *Andrews v. State*, 159 S.W.3d 98, 100–01 (Tex. Crim. App. 2005); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Evidence under both *Strickland* prongs must be firmly rooted in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). It is critical that the applicant "demonstrate the record shows both the alleged deficiency(ies) and the alleged prejudice." *Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App.—Texarkana 2006), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007). Under *Strickland*, the habeas applicant has the burden to prove "counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Mosley v. State*, 141 S.W.3d 816, 826 (Tex. App.—Texarkana 2004, pet. ref'd). The applicant must meet the burden of proof under both prongs of the *Strickland* test;

5

should the proof fail as to either, the reviewing court will have no choice but to deny the applicant's claim of ineffective assistance. *Id.*

Moreover, the reviewing court's assessment of trial counsel's performance (which was in Simpson's case first done by the trial court) must be highly deferential; that court should indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). The reviewing court must also be careful not to second guess through hindsight the strategy of counsel at trial; the mere fact that another attorney (such as applicant's current counsel) might have pursued a different course will not support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.).

In Simpson's case, under *Strickland*'s first prong, if the trial court could have reasonably envisioned a legitimate trial strategy to explain counsel's alleged ineffectiveness, and if the record supports such a conclusion by the trial court, then on appellate review we are foreclosed from sustaining Simpson's claim of reversible error. *Cf. Goodspeed v. State*, 187 S.W.3d 390, 392–93 (Tex. Crim. App. 2005). Under *Strickland*'s second prong, if the trial court could have reasonably concluded the alleged deficient performance resulted in no prejudice to Simpson's case, then we are similarly foreclosed from sustaining Simpson's claim of harm. We need not, however, conduct analysis under *Strickland*'s second prong (concerning prejudice) unless we first conclude the record

shows an abuse of discretion with respect to the trial court's decision under *Strickland*'s first prong (concerning deficient performance). *Mata v. State*, 226 S.W.3d 425, 433 (Tex. Crim. App. 2007); *Labib v. State*, 239 S.W.3d 322, 336 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## III.    The Trial Court's Habeas Corpus Record

The record in this case involves twists and turns of varying procedural and jurisdictional transfers—transfers that have a direct impact on Simpson's factually based claim of ineffective assistance. A short timeline is, therefore, useful for understanding the context of Simpson's claim.

On March 5, 2002, the State filed an original petition in the juvenile court of Fannin County, Texas, charging Simpson with six crimes. Simpson lacked only one month of attaining his eighteenth birthday when the State's petition was filed. The crimes alleged in the petition can be summarized as follows:

(1)    aggravated sexual assault, alleged to have occurred on December 30, 1999, by sexually assaulting M.S., a child younger than fourteen and not the respondent's spouse, by using Simpson's sexual organ to penetrate M.S.'s female sexual organ;

(2)    aggravated sexual assault, alleged to have occurred on December 30, 1999, by sexually assaulting M.S., a child younger than fourteen and not the respondent's spouse, by using Simpson's finger to penetrate M.S.'s sexual organ;

(3)    indecency with a child, alleged to have occurred on December 30, 1999, by (with intent to gratify or arouse his sexual desire) intentionally or knowingly engaging in sexual contact with M.S., a child younger than seventeen and not Simpson's spouse, by touching M.S.'s female sexual organ;

(4)    indecency with a child, alleged to have occurred on December 30, 1999, by (with intent to gratify or arouse his sexual desire) intentionally or knowing engaging in sexual contact with M.S. by touching M.S.'s breasts;

7

(5)    aggravated sexual assault, alleged to have occurred on December 30, 1999, by sexually assaulting J.B., a child younger than fourteen and not Simpson's spouse, by using Simpson's finger to penetrate J.B.'s sexual organ; and

(6)    indecency with a child, alleged to have occurred on December 30, 1999, by (with intent to gratify or arouse his sexual desire) intentionally or knowingly engaging in sexual contact with J.B. by touching part of J.B.'s genitals.

*See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003), § 22.021 (Vernon Supp. 2007).[3]

At a hearing on September 17, 2002, the presiding juvenile court found Simpson was born on April 19, 1983, and would have thus been sixteen years of age at the time of the alleged offenses. The juvenile court then found that the welfare of the community required the criminal proceedings against Simpson be transferred to Fannin County's District Court, that the State had met its burden of proof to support such a transfer, and that the juvenile court's waiver of its exclusive jurisdiction in this case was proper. The juvenile court then certified (or transferred) Simpson's pending charges to the 336th Judicial District Court of Fannin County. *See* TEX. FAM. CODE ANN. § 54.02(a) (Vernon 2002).

---

[3]Any statutory amendments to the applicable penal statutes are irrelevant to the issue raised by Simpson on appeal. Our citation to the current statutory versions are provided merely as a convenience to the reader.

The following week, after Simpson waived his right to indictment by a grand jury,[4] the State filed an information and complaint, both dated September 26, 2002, in the 336th Judicial District Court of Fannin County. That information and complaint alleged, in a single count, that Simpson intentionally or knowingly sexually assaulted M.S., a child younger than fourteen and not Simpson's spouse, by causing his sexual organ to penetrate M.S.'s sexual organ. Simpson pleaded guilty to this singular charge on this same date. The trial court accepted Simpson's plea, and pursuant to a negotiated plea agreement, deferred a finding of guilt and released Simpson to community supervision for a period of ten years. Simpson additionally waived his right to file a motion for new trial and appeal the trial court's judgment in connection with that guilty plea.

The following spring, on February 18, 2003, the State filed a motion to proceed with an adjudication of guilt. In lieu of adjudication, Simpson's community supervision was modified on March 28, 2003, to include a period of thirty days' confinement in jail (without work release).

On October 6 of the following year, the State filed another application to proceed to an adjudication of guilt. Again, Simpson's community supervision was modified to include an additional 200 hours of community service in lieu of proceeding to an adjudication of guilt; that modification was approved by the trial court on November 17, 2004.

---

[4]*See* TEX. CONST. art. I, § 10 (constitutional right to indictment by grand jury in felony cases); TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005) (statutory right to indictment by grand jury in felony cases), art. 1.14(a) (Vernon 2005) (accused in noncapital case may waive any right provided by law).

9

On August 8, 2007, Simpson filed an application for writ of habeas corpus. Simpson claimed his original trial counsel provided ineffective assistance of counsel by convincing him to waive the juvenile court's jurisdiction and proceed with the felony plea bargain agreement in adult court. The trial court heard testimony from several witnesses at the November 28, 2007, hearing on Simpson's writ application.

Simpson testified that he was twenty-four years old at the time of the 2007 habeas corpus hearing, but he had been only sixteen when the various crimes allegedly occurred. He also identified John Skotnik as being the lawyer appointed for him in 2002. Simpson told the trial court that Skotnik had persuaded him to accept the State's plea offer of ten years' deferred adjudication in one case rather than risk imprisonment in several cases, even though Simpson believed he was not guilty of some of those other original charges. Simpson also told the habeas court that he had resided in the same Greenville location from the date listed in the indictment until shortly before his eighteenth birthday. Simpson believed that if anyone had made an effort to locate him during 2001 or 2002, he would have been easy to find. To Simpson's knowledge, neither Skotnik nor the local police had ever had any difficulty in locating Simpson during this time period.

During cross-examination, Simpson admitted Skotnik had told the then-eighteen year old that if he successfully completed the deferred sentence, then he would not have a felony sex crime conviction on his record. He also admitted that successfully completing the deferred sentence would keep him from going to prison. And, finally, Simpson acknowledged that he had been advised by

10

Skotnik in 2002 that if he gambled on being acquitted by a jury, and if Simpson lost on that gamble, and if the jury sentenced him to prison, then it was highly unlikely that he would have been able to be free on bond during the pendency of his appeal (wherein Simpson might challenge the original transfer of his charges from juvenile court to district court). Given those options, Simpson made the decision to choose the option that (potentially) allowed him to avoid any kind of prison time.

Skotnik also testified before the 2007 habeas court. Skotnik testified he was appointed in 2001 to represent Simpson in two cases involving multiple charges of sexual assault of a child and indecency. Skotnik filed motions to quash the original felony indictments because (a) the crimes allegedly occurred when Simpson was younger than seventeen, (b) the indictments had not been obtained until after Simpson had turned eighteen and the State had failed to provide the trial court with any evidence justifying the delay in first filing a petition with the juvenile court. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(B) (requiring juvenile court to find, before transferring, that "after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because: (i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person; [or] (ii) the person could not be found . . . ."). Those motions to quash were ultimately successful.

Skotnik also affirmed Simpson's earlier testimony that the accused had always been easy to locate for court hearings and meetings with a juvenile probation officer. But Skotnik provided additional insight into the basis for Simpson's 2002 decision to agree to a waiver of the juvenile

court's jurisdiction and acceptance of the State's negotiated plea agreement: Skotnik feared that (1) a contested transfer hearing before the nonlawyer juvenile (county court) judge would have resulted in a transfer to "adult" court; (2) that although he believed such a transfer would have been improper, Skotnik knew no appeal of that ruling could be taken until after a trial that resulted in Simpson's conviction; (3) that if he had to wait until an appeal to obtain a reversal of the transfer hearing, Simpson would likely have to spend eighteen months to two years in prison during the pendency of that appeal; and (4) that Simpson was, physically speaking, "not a large statured man" and both Skotnik and Simpson himself feared he would not do well in prison. According to Skotnik, the ultimate decision of whether either to accept the State's plea bargain or to fight the charges (and appeal, if he lost at trial) was made exclusively by Simpson.

## IV.     Skotnik's Advice, and Simpson's Reliance on That Advice, Was Reasonable

Some might say Simpson faced a Hobson's Choice: (a) fight the charges, lose, and prevail on appeal, but spend more than a year in prison subject to the commonly perceived physical abuses to which persons of slight stature like Simpson are exposed; or (b) accept the State's plea bargain and avoid prison altogether if he successfully avoided further troubles with the law.

Except this was not really a Hobson's Choice. In American English, a Hobson's Choice describes a situation in which a person may only choose between two bad options. GARNER'S MODERN AMERICAN USAGE 409 (2003). But Simpson's second option was not, in reality, a bad choice because it allowed him to avoid any criminal conviction, it allowed him to avoid convictions

12

for the other charges that the State abandoned, and (most importantly) it allowed him to avoid prison during the pendency of a potential appeal. And it appears from the testimonial record in the habeas court that Simpson most wanted to avoid being sent to prison.

Skotnik was a lawyer with more than twenty years' experience, who was currently serving a term as a Bonham city judge. Skotnik knew the presiding officers of both the juvenile and the district courts, and Skotnik relied on his considerable experience in handling prior matters before those judges in predicting that either might (erroneously) approve the State's motion to transfer Simpson's charges from juvenile to adult court. Skotnik also advised Simpson about the consequences of a jury trial, and that it was his reasoned opinion that the best option for Simpson to keep from going to prison was to accept that negotiated plea agreement.

The trial court's written ruling did not explain its basis for denying Simpson's application for writ of habeas corpus. While it is better practice for a trial court to explain its habeas rulings, the record before us suggests the trial court concluded Skotnik's recommendation to Simpson to accept the State's plea offer was the product of a reasonable trial strategy. And from the record before us, we cannot say the trial court abused its discretion in reaching such a conclusion. Therefore, because the record does not demonstrate the trial court abused its discretion by holding Skotnik's performance fell within the wide range of professional norms (thus Simpson cannot prevail under *Strickland*'s first prong), we must defer to that holding.

For the reasons stated, we affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    July 1, 2008
Date Decided:    July 2, 2008

Publish