Opinion issued April 10, 2009













In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00004-CV

____________


IN RE DALE CORDER, Relator






Original Proceeding on Petition for Writ of Habeas Corpus 







O P I N I O N Relator, Dale Corder, requests habeas corpus relief from the trial court's
August 19, 2008 order holding him in contempt and committing him to confinement
in the Harris County Jail for 180 days as punishment and, thereafter, as a civil
coercive measure, from day to day until he pays child support arrearage. Real party
in interest, Norma Jean Veglia, has filed no response to relator's petition for writ of
habeas corpus. We examine relator's points of error relating to the punitive portion
of the contempt order. Holding that those points are without merit, we conclude that
the punitive portion of the contempt order is valid. We further conclude that relator's
challenge to the civil, coercive portion of the challenged order is premature, and we
thus do not reach it. We remand relator to the custody of the sheriff to finish serving
the balance of the punitive confinement assessed by the trial court.

Background


 The trial court dissolved the marriage of relator and Veglia on February 14,
2000. In the decree, the trial court ordered relator to pay Veglia child support of $400
per month on the first of each month, commencing February 1, 2000. Additionally,
the trial court ordered relator to provide medical support for the couple's children. 

 On April 8, 2008, Veglia filed a motion for contempt, alleging that,
commencing June 1, 2002 and ending April 1, 2008, relator had failed to pay child
support as ordered, resulting in an arrearage of $7,360.36. She further alleged that
relator had failed to pay her for medical support of the children as ordered in the
decree. Additionally, Veglia pleaded that two more $400 child support payments
would come due on May 1, 2008 and June 1, 2008. In July 2008, relator filed a
response to Veglia's motion, asserting inability to pay the support and claiming
reimbursement and offsets for support that he had provided to one of the children
when that child had lived with relator from June 2006 to June 2008.

 On August 19, 2008, the trial court heard Veglia's motion for contempt. The
trial court found that although he had the ability to pay them, relator did not make his
$400 monthly child support payments for the periods of July 1, 2005 through October
1, 2006 and April 1, 2008 through August 1, 2008. Additionally, the trial court found
relator's ongoing, periodic child support arrearage that had accrued during the period
from June 1, 2002 through August 19, 2008, when added to a May 10, 2002
previously adjudicated amount, to total $15,069.91. Moreover, the trial court found
that relator owed Veglia $4,781.82 for his share of health insurance premiums and
uninsured medical expenses that she had paid, for a total child support arrearage of
$19,851.73, exclusive of attorney's fees. Finally, the trial court found that relator
owed Veglia $7,735 in attorney's fees for her attorney's services relative to the
contempt proceeding. The trial court assessed relator multiple 180-day punitive
confinement sentences for each of the multiple violations of the child support order
that it found and ordered that the periods of punitive confinement run concurrently.

 As a civil, coercive measure, the trial court also ordered that after relator
completed his punitive confinement, he remain confined from day to day until he paid
Veglia the $19,851.73, attorney's fees of $7,735, and court costs. The sheriff took
relator into custody on August 19, 2008, where he remained until February 4, 2009,
when, upon posting bond, he was conditionally discharged from confinement,
pending our final determination of his petition for habeas corpus relief.

Standard of Review

 A habeas corpus petition is a collateral attack on a judgment, the purpose of
which is not to determine the final guilt or innocence of the relator, but to ascertain
whether relator has been confined unlawfully. Ex parte Gordon, 584 S.W.2d 686,
687-88 (Tex. 1979). The presumption is that the order is valid. In re Turner, 177
S.W.3d 284, 288 (Tex. App.--Houston [1st Dist.] 2005, orig. proceeding) (citing Ex
parte Occhipenti, 796 S.W.2d 805, 809 (Tex. App.--Houston [1st Dist] 1990, orig.
proceeding)). We issue a writ of habeas corpus if a trial court's contempt order is
beyond the court's power or the court did not afford relator due process of law. Id.
at 288 (citing In re Henry, 154 S.W.3d 594, 596 (Tex. 2005)). The realtor bears the
burden of showing that he is entitled to relief. Id. at 288 (citing Occhipenti, 796
S.W.2d at 808-09).

Punitive Confinement Assessment

 We first examine relator's points of error one, two, three and five, which bear
on the validity of the trial court's assessment of concurrent punitive confinement for
180 days.


 A. Rights to a Jury Trial and Against Self-Incrimination

 In points of error one and two, relator asserts that his due process rights under
United States Constitution Amendment V and Texas Constitution article I, section 15
were violated because the trial court did not admonish him of his right to a jury trial
and his right not to give evidence against himself. Cases of criminal contempt in
which the sentence actually imposed does not exceed six months' imprisonment are
exempt from the requirements of a jury trial. Taylor v. Hayes, 418 U.S. 488, 495-96
94 S. Ct. 2697, 2702 (1974); Ex parte Werblud, 536 S.W.2d 542, 547 (Tex. 1976). 
Here, the punishment imposed did not exceed six months. Thus, relator had no right
to a jury trial under the United States Constitution. Further, relator waived any
privilege against self-incrimination that he had under the Fifth Amendment of the
United States Constitution when his counsel put him on the stand to testify on direct
examination in support of his affirmative defenses and when, on cross-examination,
neither he nor his attorney claimed the privilege. See Ex parte Tankersly, 650 S.W.2d
550, 551 (Tex. App.--Fort Worth 1983, writ ref'd n.r.e.) (holding that relator waived
claim against self-incrimination when neither he nor his attorney asserted it, citing
Roberts v. United States, 445 U.S. 552, 560, 100 S. Ct. 1358, 1364 (1980)). Relator
cites no cases supporting his argument that in this case, the Texas Constitution
affords him a right to a trial by jury and to a trial court admonition of a right not to
be forced to incriminate himself. We have been unable to find such cases, and we
decline to hold that the Texas Constitution affords such rights in this case. We
overrule points of error one and two.

 B. Inability to Pay Child Support Payments As They Came Due

 In response to Veglia's motion for contempt, relator pleaded the affirmative
defense of inability to pay the child support. In point of error three, relator asserts it
was error and a denial of due process for the trial court to incarcerate him after he had
proven his affirmative defense and when Veglia could not prove criminal contempt
beyond a reasonable doubt. 

 A writ of habeas corpus is a collateral attack on the contempt order. Ex parte
Townsley, 297 S.W.2d 111, 112 (Tex. 1956). We treat the contempt order as void if
the evidence offered at the hearing conclusively establishes relator's involuntary
inability to perform. Id. For this Court to hold the punitive portion of the contempt
order invalid, relator must conclusively establish that he was unable to pay each child
support payment as it accrued. Ex parte Papageorgiou, 685 S.W.2d 776, 778 (Tex.
App.--Houston [1st Dist.] 1985, orig. proceeding). 

 Here, the time periods during which the trial court found that relator did not
make the child support payments were July 1, 2005 through October 1, 2006 and
April 1, 2008 through August 1, 2008. On direct examination, relator testified that
he had hurt himself at work and became disabled from July 2005 to the date of the
hearing (August 19, 2008); that during this period he had been unable to obtain
employment; that during this period he had tried to borrow money to pay the child
support from "everybody," including his parents, family friends, brother, and even his
ex-wife's father; that he had no collateral to give a bank for a loan; that he was not
then paying his attorney; that he lived in a trailer for which a friend paid the rent; that
he did not own a car; that he had no medical coverage; and that he did not have the
present ability to pay the $20,000 child support arrearage and $8,000 attorney's fees.

 On cross-examination, relator testified that he was not totally disabled; that he
could answer a telephone; that he had bought and re-sold maybe "one or so" cars; and
that he probably had $100 in his pocket. Veglia's counsel called Veglia as a rebuttal
witness through whom a Brazoria County "Sheriff's Petition and Notice of Seizure
and Intended Forfeiture" was admitted into evidence. Veglia testified that it reflected
that in June 2006, relator was found to have $6,639 cash in his pocket and a Ruger
.45 caliber pistol, a Marlin .22 caliber firearm, an Ultra High Powered .22 caliber
rifle, multiple prescription drugs, and six baggies, believed to contain marijuana.

 Relator's testimony that he was not totally disabled, that he could answer a
phone, that he had bought and re-sold one or more cars, as well as the evidence in the
notice of seizure that in June 2006 he was in possession of three firearms, and was
engaged in drug trafficking, tended to discredit and to impeach his testimony that
during the period in question, he was unable to obtain employment. The trial court
reasonably could have concluded that relator could afford to make at least one of the
$400 child support payments required under the decree. We hold that, on the basis
of the record before this court, relator has not conclusively demonstrated his
involuntary inability to comply with every one of his $400 child support payments
when they became due. We overrule point of error three.

 C. Offsets Against Child Support

 In point of error five, relator asserts that the trial court erred in denying him the
opportunity to finish testifying relative to the support that he provided to one of his
children in 2005, when that child came to live with relator on a full-time, permanent
basis. Relator also asserts that it was error to deny him the opportunity to testify to
direct payments for child support that he had made to Veglia. Relator has waived this
point of error because he did not make an offer of proof regarding these matters. See
Tex. R. Evid. 103(a)(2) ("Error may not be predicated upon a ruling which . . .
excludes evidence unless . . . the substance of the evidence was made known to the
court by offer or was apparent from the context within which the questions were
asked.").


Civil, Coercive Confinement Assessment

 As a civil, coercive measure, the trial court ordered that after relator had
completed his punitive confinement, he remain confined from day to day until he paid
Veglia the $19,851.73, attorney's fees of $7,735, and court costs. Based upon our
February 3, 2009 order, relator was conditionally discharged from jail on February
4, 2009, 11 days before his 180-day sentence of punitive confinement would have
ended on August 15, 2009. Because the civil, coercive portion of the trial court's
contempt order will not go into effect until relator completes his punitive confinement
assessment, relator's assertion, in point of error four, that he is presently unable to
comply with it is premature. See Ex parte Robertson, 880 S.W.2d 803, 803-04 (Tex.
App.--Houston [1st Dist.] 1994, orig. proceeding) ("A relator's current inability to
pay does not affect his obligation to serve the criminal contempt portion of his
sentence."). We thus do not reach point of error four.

Conclusion

 We remand relator to the custody of the Sheriff of Harris County to serve the
balance of his 180-day punitive confinement assessment, without prejudice thereafter
to his requesting habeas corpus relief from the civil, coercive portion of the trial
court's contempt order.



 Tim Taft

 Justice



Panel consists of Justices Taft, Bland, and Sharp.