

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00050-CV

_____

IN RE:  WILLIAM BARNES DAVIS

Original Habeas Corpus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

During the pendency of a hotly- and bitterly-contested divorce proceeding, William Barnes Davis was ordered to pay various debts owed by the community estate which were necessary to protect community assets; Davis did not pay these things. On February 24, 2012, the judge of the 402nd Judicial District Court in Wood County held him in contempt and ordered him committed to jail for having failed to obey the court's order. The trial court, however, then suspended imposition of the confinement on condition that he make the payments as ordered. Once again, Davis failed to pay as he had been ordered, prompting another hearing which was conducted May 4, 2012. At that second hearing, the trial court withdrew its suspension of the prior contempt order and issued an entirely new order based largely on the prior order; this order directed that Davis be incarcerated for seventy-two hours and remain imprisoned thereafter until he purged himself by obeying the order of the court (i.e., make the payments he was ordered to pay). Davis has filed an application for writ of habeas corpus with this Court, seeking to be discharged from what he claims is his illegal confinement. This Court set a bond for Davis' release pending determination of the merits of his claims.

In his application to this Court, Davis disputes neither the trial court's finding that he was ordered to pay the sums, nor its finding that he has not paid any part of the sums he was ordered to pay. Rather, Davis argues that (1) we should find the contempt order void because the underlying order to pay is so ambiguous that it is unenforceable, and (2) his failure to pay was

2

due to his inability to pay (because of a lack of necessary funds) and not due to a contumacious refusal to obey the orders of the trial court.

We first note that Davis has attached to his application three affidavits (his affidavit and the affidavits of two other affiants), each swearing to his inability to now get loans from his usual sources in order to pay the ordered sums.

Over a month after this application was filed, the relator filed a court reporter's record of the final contempt proceeding. We recognize that there is evidence from Davis that he had no money available. However, we also recognize that there was evidence that a very substantial amount of money had passed through his hands during the preceding months and year. He countered that evidence by suggesting that most of the funds had simply gone through his hands en route to paying suppliers for his house construction and remodeling business. He also testified he had no checking or savings accounts, and had no cash available beyond the contents of his wallet. Davis also testified that his usual sources of loans had dried up for various reasons.

We further recognize that the various orders and pleadings in this case make it clear that at one recent juncture Davis was arguing that certain of the community property (apparently the property generating the need for the payment of funds from Davis in order to preserve them—should be sold to him and not to a third party. In those pleadings, Davis was alleging that he had access to hundreds of thousands of dollars in funds sufficient to purchase it. Those pleadings contradict Davis' claims that he is indigent and does not have access to the funds necessary to make the payments which he was ordered to pay.

3

A writ of habeas corpus is a collateral attack on the contempt order. *Ex parte Townsley*, 297 S.W.2d 111, 112 (Tex. 1956) (orig. proceeding). We treat the contempt order as void if the evidence offered at the hearing conclusively establishes the relator's involuntary inability to perform. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). For this Court to hold the civil portion of the order invalid, the relator must conclusively establish that he is unable to pay the delinquency at the time of the contempt hearing and that he has no source from which he might be expected to obtain the money to discharge the arrearage. *Id.*; *Ex parte Papageorgiou*, 685 S.W.2d 776, 778 (Tex. App.—Houston [1st Dist.] 1985, orig. proceeding). He must show without substantial contradiction in the record that he was unable at the time of the hearing to do the act required by the judgment as a condition for release from custody. *Papageorgiou*, 685 S.W.2d at 778.

The direct evidence is that he cannot pay, but there is evidence which would support a conclusion that he did not pay because of other reasons. We cannot conclude that he has conclusively established the inability to pay, which is required to prevail under this review.

A habeas corpus proceeding is a collateral attack on a judgment, the purpose of which is not to determine the final guilt or innocence of the relator, but to ascertain whether the relator has been confined unlawfully. *Ex parte Gordon*, 584 S.W.2d 686, 687–88 (Tex. 1979) (orig. proceeding). We begin with the presumption that the order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). We issue a writ of habeas corpus if a trial court's contempt order is beyond the court's power or the court did not afford the

relator due process of law. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding) (per curiam). The relator bears the burden of showing that he is entitled to relief. *In re Corder*, 332 S.W.3d 498, 501 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

There is no doubt that the relator was restrained. He was incarcerated when this application was filed and is now on bond pending our final decision. The first question postulated by Davis is whether the underlying order is sufficiently specific to support a judgment of contempt. It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific, and unambiguous terms so that such person will readily know precisely what duties or obligations have been imposed upon him. *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988) (orig. proceeding); *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding). However, the more basic (and usually unquestioned) underpinning to that requirement is that the order of contempt be based on a prior order.

We recognize a lack of precision in the underlying order of which Davis complains, this resting primarily with its handwritten revisions. Unexplained notations and incomplete sentences make the document somewhat less than crystal clear; when the underlying order is unclear, then that which is necessary to be performed is likewise unclear. However, we need not ultimately determine whether the order is sufficiently clear to support a properly written order of contempt, because the order of contempt itself is void.

The order of which Davis complains does not simply order his incarceration for the failure to obey the underlying order, it also orders him to be incarcerated until he pays an additional attorney's fee that does not appear to have previously been ordered to be paid.[1] The Texas Constitution prohibits imprisonment for debt, so a contempt order based solely on a failure to pay a debt is void. *See* TEX. CONST. art. I, § 18 ("No person shall ever be imprisoned for debt."). This does not apply, however, in other contexts, where the nonpayment is treated as a failure to perform a legal duty, such as the payment of child support. *See* TEX. FAM. CODE ANN. §§ 157.001, 157.166–.167 (West 2008); *Henry*, 154 S.W.3d at 596. Jailing for debt is thus not permissible save only in a very few circumstances where the imprisonment is not for debt, but for failure to follow a court order and perform a legal duty, such as failure to pay child support and attorney's fees related to child support. *Henry*, 154 S.W.3d at 596.

Moreover, if the commitment order does not separate penalties for each contemptuous act, then *any* basis for voiding the order requires that the contemnor be discharged from confinement. *Id.* at 598 (voiding contempt order of confinement for failure to pay legal child support obligations because order also included an unconstitutional requirement to repay "debt"); *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding) (per curiam). Issuing an order to utilize money belonging to the community to preserve assets of the community pending divorce is not purely a debt-related situation. However, an order to remain incarcerated until an

---

[1] The order directs Davis to pay $2,500.00 in attorney's fees previously ordered to be paid, but also directs him to pay an additional $2,500.00 attorney's fees related to these proceedings incurred by his spouse.

attorney's fee (that is unconnected to any precedent order to pay that was not obeyed—or indication that the fee was in the nature of a debt enforceable by contempt) is paid will not support an order of civil contempt.

Accordingly, we grant relator's petition and vacate the trial court's order holding him in contempt and ordering that he be incarcerated. We further order relator released from the bond set by this Court on May 8, 2012, and order relator discharged from custody.


Bailey C. Moseley
Justice

Date Submitted:     June 14, 2012
Date Decided:      June 15, 2012