

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00170-CR

_____

EX PARTE:  JUAN RESENDIZ

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 40,351-B-H-1

Before Morriss, C.J., Moseley and Carter*, JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Mexican citizen Juan Resendiz, while a legal, permanent resident of the United States, pled guilty, pursuant to a plea agreement, to the offense of assault family violence after physically abusing his wife. While evidence demonstrates that Resendiz' trial counsel advised him that it was likely he would be deported as a result of his plea and conviction, the law requires trial counsel to have advised Resendiz that automatic deportation would result. According to this record, Resendiz never got that explicit advice. But, because the evidence supports the trial court's finding that Resendiz' plea would not have changed if he had been so advised, we affirm the trial court's denial of Resendiz' petition for writ of habeas corpus.

Pursuant to a negotiated plea agreement, Resendiz pled guilty to and was convicted of the offense of assault family violence.[1] Resendiz was sentenced to ten years' confinement. However, in accordance with the terms of the plea agreement, his sentence was suspended, and he was placed on regular community supervision for six years. After Resendiz became the subject of deportation proceedings, he filed an application for writ of habeas corpus under Article 11.072 of the Texas Code of Criminal Procedure, alleging that his plea was involuntary because his trial counsel rendered ineffective assistance in failing to adequately advise him of the deportation consequences of his guilty plea. The habeas court denied Resendiz' application, and Resendiz appeals. We affirm.

An applicant seeking relief via the writ of habeas corpus must prove his claim by a preponderance of the evidence. *See Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App.

---

[1]Because Resendiz was previously convicted of assault family violence, this offense was enhanced to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014).

2

2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *In re Davis*, 372 S.W.3d 253, 256 (Tex. App.—Texarkana 2012, orig. proceeding). In reviewing a habeas court's ruling on a post-conviction application for the writ, we view the evidence in the light most favorable to the habeas court's ruling, and we uphold that ruling absent an abuse of discretion. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *see Ex parte Simpson*, 260 S.W.3d 172, 174 (Tex. App.—Texarkana 2008, pet. ref'd).

We afford "great deference to the habeas court's findings of fact and conclusions of law that are supported by the record, . . . even when the findings are based on affidavits rather than live testimony." *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on reh'g) (citing *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). To the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor, we also afford great deference to the habeas court's application of the law to the facts. *See id.*

Resendiz' application for writ of habeas corpus must "attack the 'legal validity' of '(1) the conviction for which or order in which community supervision was imposed; or (2) the conditions of community supervision.'" *Ex parte Villanueva*, 252 S.W.3d 391, 395 (Tex. Crim. App. 2008) (quoting TEX. CODE CRIM. PROC. ANN. art. 11.072, § 2 (West Supp. 2014)).

Here, Resendiz argues that his plea was involuntary because his trial counsel rendered ineffective assistance in failing to advise him of the mandatory deportation consequences of his guilty plea. Because Resendiz is seeking habeas corpus relief based on a claim of ineffective assistance of counsel, he must prove it by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d 659, 664 (Tex. Crim. App. 2006).

3

In reviewing a claim of ineffective assistance of counsel, we follow the United States Supreme Court's two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984). To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012). "In the context of involuntary plea, the 'different outcome' is choosing not to plead and instead choosing to go to trial." *Moussazadeh*, 361 S.W.3d at 691. Failure to make either one of these required showings defeats an ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

*(1)     Resendiz Was Never Notified that Conviction Would Result in Automatic Deportation*

First we review the habeas record, which must affirmatively demonstrate trial counsel's faulty action. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Resendiz, who was proficient in the English language, signed a written admonishment and acknowledged in open court his understanding that his guilty plea *could* result in deportation. On learning that Resendiz was not a citizen of the United States, the trial court engaged him in the following discussion:

> THE COURT: Since you are not a citizen, a plea of "guilty" or "nolo contendere" to this offense could result in your deportation or your denial of naturalization or your exclusion from admission to this country. Do you understand that?
>
> [DEFENDANT]: Yes, sir.

4

THE COURT:  Have you and [trial counsel] discussed that issue?

[DEFENDANT]:  Yes, sir.

THE COURT:  And you -- [trial counsel], have you discussed the possible ramifications of him pleading "guilty" to this offense?

[DEFENSE ATTORNEY]:  I have, Your Honor.

THE COURT:  And the effect on his immigration status?

[DEFENSE ATTORNEY]:  Judge, he's a legal resident, and he understands that's a privilege, not a guarantee, and that they can do what -- what they choose.

Resendiz' trial counsel filed an affidavit highlighting his efforts in investigating the case and demonstrating (1) that he discussed with Resendiz the facts of the case and the discovery obtained, including recorded interviews of his wife and other witnesses, (2) that Resendiz was fully aware of the charges filed against him, (3) that Resendiz accepted the plea agreement because he was concerned that his prior criminal history could be used against him at trial, (4) that Resendiz' "primary concern throughout the entire pendency of the case was that he wanted to be absolutely sure he would not go to prison," and (5) that Resendiz was fully admonished and fully understood the consequences of his plea.  Thus, trial counsel concluded that the plea was knowing and voluntary.  With respect to the complaint of ineffective assistance, trial counsel swore,

> I absolutely advised [Resendiz] that he *might well be* deported and lose his Permanent Residence Status because of the plea at hand and his significant criminal history.  I advised him to see an Immigration attorney, not to become a United States citizen, but to find out whether or not he would be able to keep his legal residence status. . . . The only reason to see an Immigration attorney was because of the very difficult situation brought about by the pending Felony case

5

against [Resendiz]. The only discussion regarding citizenship was that it was very unfortunate that he was not a citizen, because with this case and his prior history he *could very well* be deported and lose his papers . . . .

Counsel did inform Mr. Resendiz of the *possible* Immigration issues and for that very reason advised him to see an Immigration attorney. The Court also informed Mr. Resendiz of the *possible* immigration consequences during the plea process. [Resendiz] was much more concerned throughout the entire process with avoiding any possibility of prison time than with anything else.

(Emphasis added.).

In its order denying Resendiz' application for writ of habeas corpus, the habeas court found that trial counsel had advised Resendiz "of the *high likelihood* that his permanent resident status would be revoked" and "that he 'might well be' deported . . . because of the plea at hand and his significant criminal history." (Emphasis added.) The habeas court also found (1) that trial counsel did not give Resendiz any erroneous advice, (2) that Resendiz was most interested in avoiding jail, (3) that the affidavits from Resendiz and his wife were not as credible as trial counsel's, (4) that trial counsel did not downplay the danger of deportation, and (5) that Resendiz was willing to risk deportation to avoid jail time.

The United States Supreme Court has held that the Sixth Amendment requires a criminal defense attorney to inform his client of the risk of automatic deportation as a result of his guilty plea. *State v. Guerrero*, 400 S.W.3d 576, 587 (Tex. Crim. App. 2013) (citing *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010) ("The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation.")). The Court explained in *Padilla*,

When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges

6

may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

599 U.S. at 369; *see Moussazadeh*, at 688–89, 691. Here, even though Resendiz' sentence was suspended and he was placed on community supervision, the law is clear that Resendiz' conviction for assault family violence subjected him to mandatory deportation. *See* 8 U.S.C.A. §§ 1101(a)(43)(F), 1101(a)(48)(A), 1227(a)(2)(A)(iii) (2014); *Guerrero*, 400 S.W.3d at 587–88.

"Courts have recognized that 'the distinction between possible and certain immigration consequences' requires counsel for defendants facing certain deportation to specifically advise clients of those consequences." *Ex parte Valasquez-Hernandez*, No. WR-80,325-01, 2014 WL 5472468, at *3 (Tex. Crim. App. Oct. 15, 2014) (not designated for publication) (quoting *United States v. Urias–Marrufo*, 744 F.3d 361, 368 (5th Cir. 2014) (emphasis omitted)). Resendiz cites to several decisions finding that trial counsel rendered constitutionally ineffective assistance by merely informing the defendant that deportation *could* ensue instead of informing the defendant that his plea of guilty to certain offenses would subject him to near-certain automatic removal from the United States. *See Ex parte Torres*, No. 08-12-00244-CR, 2014 WL 1168929, at *1, *4 (Tex. App.—El Paso Mar. 21, 2014, pet. granted) (not designated for publication) (informing defendant that deportation could ensue and advising him to contact immigration attorney is insufficient); *see Ex parte Leal*, 427 S.W.3d 455, 461 (Tex. App.—San Antonio 2014, no pet.); *Ex parte Rodriguez*, 378 S.W.3d 486, 489 (Tex. App.—San Antonio 2012, pet. ref'd); *Salazar v. State*, 361 S.W.3d 99, 103 (Tex. App.—Eastland 2011, no pet.) (use of terms "likelihood" and "possibility" of removal when conviction would result in "certain deportation" rendered

counsel's assistance ineffective); *see also Martinez v. State*, No. PD-1338-11, 2012 WL 1868492, at *4 (Tex. Crim. App. May 16, 2012) (not designated for publication).[2]

Here, the record demonstrates that Resendiz was advised only that he could face deportation and was not advised that he would face mandatory deportation if he pled guilty to assault family violence. Counsel's failure to provide this advice fell below the standard required of him by the law. Resendiz has met the first *Strickland* prong.

*(2)     Sufficient Evidence Supports the Finding that Resendiz' Plea Would Not Have Changed*

Next, Resendiz was required to show that, had he been given the proper advice, he would have decided to reject the State's plea offer and would have opted to go to trial instead. *See Moussazadeh*, 361 S.W.3d at 691; *Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). Further, Resendiz had to show that a decision to reject the plea agreement would have been rational under the circumstances. *See Ali*, 368 S.W.3d at 835 (citing *Padilla*, 559 U.S. at 372).

Resendiz argues (1) that it would have been rational for him to reject the plea agreement because his wife no longer wished to press charges against him and attempted to recant her statement that Resendiz had assaulted her and (2) that his affidavit established that he would have gone to trial had he known about the mandatory deportation consequences of his plea. However, trial counsel's affidavit contradicts both of Resendiz' assertions. That affidavit stated that, "in a taped interview, [Resendiz' wife] stated that [Resendiz] had been beating her the entire time they were driving down the road and pulling her hair so hard that she could not

---

[2]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

breathe." Counsel also swore that, even though Resendiz knew "that he might well be deported," his main concern was avoiding confinement.

"The habeas court is the sole finder of fact in an article 11.072 habeas proceeding, and we afford almost total deference to its determinations of historical fact that are supported by the record." *Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.—San Antonio 2014, pet. ref'd); *see Guerrero*, 400 S.W.3d at 583. Unless he received community supervision, Resendiz risked the possibility of confinement for two to ten years if convicted of the third degree felony offense. *See* TEX. PENAL CODE ANN. § 12.34(a) (West 2011). Resendiz was very concerned that his "significant criminal history" would not curry favor with a jury. Trial counsel's affidavit explained,

> The State initially offered a plea agreement in the case of four (4) years in the Texas Department of Corrections. The District Attorney indicated that he was only offering a recommendation of penitentiary time because of Applicant's significant criminal history. The Applicant was very concerned that his prior criminal history could be used against him in a trial. I informed the Applicant that his prior record could be admissible in a trial at the Guilt/Innocence phase if he testified and would be admissible at the Punishment phase whether or not he chose to testify. The Applicant was adamant that he did not want to risk going to prison.

If Resendiz had rejected the State's second plea offer, gone to trial, and been convicted, as appeared likely in light of the damning recorded interviews, he would have risked the same deportation consequences and, in addition, could have been sentenced to up to ten years of actual jail time. By accepting the State's plea offer, Resendiz accomplished his goal of avoiding confinement altogether. Because the habeas court was entitled to believe trial counsel's version of events, it could have reasonably concluded that it would not have been rational for Resendiz

9

to reject the plea agreement and go to trial. The habeas court was free to determine that Resendiz would have rather faced deportation instead of confinement. Thus, we find no abuse of discretion in the habeas court's conclusion that Resendiz failed to meet his burden to show that the result of the proceedings would have been different had he been advised of the mandatory deportation. We conclude that Resendiz failed to meet the second *Strickland* prong.[3]

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    December 17, 2014
Date Decided:    January 13, 2015

Do Not Publish

---

[3]Resendiz also argues that he was entitled to an evidentiary hearing to prove his allegations. However, nothing in Article 11.072 requires the habeas court to conduct a hearing before rendering its decision on the habeas corpus relief sought. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. While Section 6(b) of Article 11.072 states that a habeas court may order, among other things, a hearing, it does not require the court to do so. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(b) (West Supp. 2014); *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.); *Ex parte Gonzalez*, 323 S.W.3d 557, 558 (Tex. App.—Waco 2010, pet. ref'd); *Ex parte Franklin*, 310 S.W.3d 918, 922–23 (Tex. App.—Beaumont 2010, no pet.).